**Robbie Lee Tucker ROBERTS, et al., Plaintiffs,**

v.

**James Lyndall McCRORY, et al., Defendants.**

**No. CIV–86–1571–P.**

United States District Court,
W.D. Oklahoma.

Dec. 14, 1987.

Jence L. Thomas, Mark A. Oruch, Birdsong & Brown, Oklahoma City, Okl., for plaintiffs.

Michael A. Cawley, Thompson & Cawley, Ardmore, Okl., Drew Neville, Russell Cook, Linn & Helms, Oklahoma City, Okl., for defendants.

**ORDER OF DISMISSAL WITH PREJUDICE AND ISSUANCE OF SANCTIONS**

PHILLIPS, District Judge.

## I. INTRODUCTION

This case presented one of the more unusual pieces of litigation to be transferred to the docket of this judge since taking the oath of office in June 1987. Unfortunately, it also involved massive noncompliance with the pretrial scheduling orders of this Court, as well as negligent and unethical conduct by plaintiffs' counsel.

After the submission of numerous Court-ordered affidavits and filings dealing with the issue of noncompliance, as well as several hearings devoted to the merits of the

matter, it became apparent that plaintiffs' case was fatally flawed, riddled not only with frivolous claims but also with spurious evidentiary offerings. The result has been an enormous waste of the time and resources of the clients, opposing counsel and the Court. As a result, the Court has determined that the case should be dismissed with prejudice, sanctions in the amount of $5,000.00 should be imposed against plaintiffs' counsel, Jence Thomas, and the matter should be referred to the Oklahoma Bar Association and other bar associations for any further disciplinary action they deem appropriate.

## II. FACTS AND HISTORY OF THE CASE

### A. *Background*

R.F. McCrory died August 22, 1950. At the time of his death, he was survived by his son (defendant James L. McCrory), his daughter (plaintiff Robbie L. Roberts), and his wife (Montie Ray McCrory). No will was ever offered for probate. In 1958, the son, the daughter and R.F. McCrory's wife filed an estate tax return relating to the decedent's estate which claimed R.F. McCrory died intestate owning property worth $1,400.00. The Oklahoma Tax Commission, after a lengthy investigation, concluded the decedent owned no real property or oil and gas leases.

In 1986, thirty-six years after R.F. McCrory's death, plaintiffs' counsel filed two suits on behalf of two separate groups of plaintiffs, with both cases being consolidated for discovery and trial by the Chief Judge of this district. The first lawsuit was filed on behalf of plaintiff Robbie L. Roberts, the daughter of R.F. McCrory. She contends that R.F. McCrory died in 1950 *without* a valid will. In substance, she contends that defendants James L. McCrory and Harley Brown have conspired over the last three decades to deprive her of her one-third intestate share of R.F. McCrory's estate and have converted property to which she was entitled.

Approximately one month later, plaintiffs' counsel filed the second lawsuit on behalf of the grandchildren of R.F. McCro-ry. The grandchildren contend that R.F. McCrory died testate in 1950 *with* a valid will. This group, in substance, claims that they were to receive all of the decedent's property when the youngest grandchild turned 21. This event occurred in 1968, eighteen years prior to the institution of the lawsuit. According to the grandchildren plaintiffs, defendant James L. McCrory has converted the properties that the grandchildren are entitled to under the alleged will of R.F. McCrory.

Another twist to the inconsistent positions taken by the plaintiffs in these consolidated cases is that the principal witness for the second group of plaintiffs, who are contending that McCrory died *with* a will, is Ms. Robbie L. Roberts, the same plaintiff who is contending that McCrory died *intestate*. Moreover, Ms. Roberts, in prior state court proceedings in Oklahoma had taken the position that R.F. McCrory died intestate. To complicate matters further, in 1958, Ms. Roberts signed the estate tax return relating to her father's estate, in which she represented under oath that her father died *intestate* owning property worth only $1,400. The plaintiffs now claim the value of the same estate, which the Oklahoma Tax Commission found to have contained *no* real property or oil and gas leases, to be in excess of $30 million.

Recognizing the inherent practical problems, as well as the potential ethical problems for plaintiffs' counsel in trying the two cases together, the Court suggested, and the parties agreed, to bifurcate the proceedings. Since the parties concurred that the grandchildren's entire case depended upon their ability to establish the existence and terms of the alleged will, the grandchildren's case was be tried first, focusing on the narrow issue of whether plaintiffs could establish both the existence and contents of a validly executed will.

The controlling law in this area is undisputed. Oklahoma law does not recognize a will unless its existence and terms are proven in accordance with statutory requirements. 58 O.S. §§ 21 *et seq.* Essentially, there are two ways to prove a will in Oklahoma. The first way is to put into

evidence a written document which purports to be a will. 58 O.S. §§ 21–24. This method was not before the Court in this case.

The second way to prove a will involves lost or destroyed wills. 58 O.S. §§ 81–82. It is this way that the grandchildren plaintiffs attempted to prove the alleged will in this case. In Oklahoma, a person desiring to prove a will may avoid the requirement of producing the document only if the following requirements are proven:

1. A validly executed document must be proved to have been in existence at the time of the death of the person making the will.

2. All of the provisions of the will must be clearly and distinctively proved by *two credible witnesses* who actually saw the will and who can testify to the contents of the will from his or her own knowledge. [58 O.S. § 82; *Matter of Robbs' Estate*, 581 P.2d 1327 (Okla.App.1978).]

A person who attempts to prove a will without offering the writing into evidence has the burden of proof on all of the requirements set forth above. *Janzen v. Claybrook*, 420 P.2d 531 (Okla.1966). The evidence concerning both the existence and the contents of the will must be clear and convincing. *Day v. Williams*, 184 Okl. 117, 85 P.2d 306 (1939).

Moreover, in order for a non-holographic will to constitute a validly executed document under Oklahoma law, the following requirements must be proved:

1. The will must be in writing;

2. The will must be signed at the end by the person making the will (the testator);

3. The testator must sign his name in the presence of the attesting witnesses, or be acknowledged by the testator to have been made by him or by his authority;

4. The testator must at the time of signing or acknowledging the will, declare to the attesting witnesses that the instrument is his will;

5. There must be two (2) attesting witnesses, each of whom must sign his name as a witness at the end of the will at the testator's request and in his presence. [84 O.S. § 55.]

In this case, it was unnecessary to instruct the jury on these requirements. Plaintiffs called only two witnesses, Robbie L. Roberts and defendant James L. McCrory, in an effort to establish both the existence and contents of the will. Aside from being impeached by the positions she had taken in her prior state court litigation, the 1958 estate tax return and the pending companion federal case, all in which she claimed R.F. McCrory died intestate, her testimony did not even begin to establish the legal requirements set forth above. Indeed, as plaintiffs' counsel acknowledged at the subsequent hearing on the motion for a directed verdict, even viewing Ms. Roberts' testimony in its best light, she could only testify to portions of a document which did not rise to the level of a validly executed will. Defendant J.L. McCrory testified that he recalled seeing a document which left everything to his mother, but could not verify that it was his father's last will and testament, nor could he establish that it was a validly executed document. In short, his testimony contradicted Ms. Roberts on several points and added nothing to plaintiffs' case. After presenting these two witnesses, who were unable to agree on anything even remotely resembling a validly executed will, plaintiffs' counsel rested. The Court found that the evidence was neither clear nor convincing [nor credible], and promptly directed a verdict. As the Court pointed out in its ruling, the grandchildren plaintiffs completely failed to establish the requirements of a lost or destroyed will. This left only the claims of plaintiff Robbie L. Roberts to be resolved.[1]

1. Plaintiffs' counsel had represented to both this Court and U.S. Magistrate Robin Cauthron that if the grandchildren plaintiffs could not establish the validity of the will, the only remaining claims would be those of Robbie L. Roberts, who was claiming McCrory died intestate. Despite these representations, plaintiffs' counsel later attempted to resurrect additional claims

By this time, however, as discussed in more detail *infra*, the Court was having serious doubts about the trial preparation and legal theories of plaintiffs' counsel, Jence Thomas. Accordingly, the Court excused the jury for two weeks, ordered Ms. Thomas to file a trial brief outlining her remaining theories of recovery. In the interim, the Court continued to rule on plaintiffs' proffered evidence on the remaining claims.

### B. *Frivolous Evidentiary Offerings*

The Motion in Limine filed by defense counsel on October 2, 1987, provided an even more disturbing insight into plaintiffs' case. Because it was apparent that plaintiffs' case was in such a poor state of preparation, the Court held a series of early morning and afternoon conferences while in trial on other matters in an effort to prepare this case for trial. During these hearings, the Court was shocked at some of the evidence proffered by plaintiffs' counsel.

In order to purportedly establish that defendant James L. McCrory was the type of person who would "manipulate" and "control" others, and was likely to have perpetrated the fraud alleged in this case, plaintiffs' counsel planned to embark on a trial strategy which would establish that defendant McCrory and his father, R.F. McCrory, had engaged in a pattern of criminal behavior spanning the *last several decades*. This "proof" which, by the way, consisted primarily of antiquated Oklahoma newspaper articles and the proffered testimony of a psychologist, who also

served a small Oklahoma community as a bondsman, is summarized in plaintiffs' Exhibit 67.[2] Exhibit 67 outlines the following events plaintiff intended to prove at trial:

SECTION ONE 1929, Rape Charge; Cortez Craddock & Lyndall McCrory, Jury Trial—Not Guilty.

SECTION TWO R.F. McCrory; Communities, June 21, 1919–Criminal Charges Assault with deadly weapon December 5, 1910–February 27, 1929, forcing signature on Deed at gun point.[3]

SECTION THREE August 9, 1920— First Degree Robbery, Convicted & suspended sentence which was later revoked. Co-defendant was Bill Wisdom.

SECTION FOUR March 30, 1933— First Degree Murder, Co–Defendant George Malone—Jury reduced to manslaughter in the First Degree & conviction of same.

SECTION FIVE April 16, 1987—Federal Charges being activated, 21 Counts involving Mail Fraud, Wire Fraud & lying to federal investigators.

SECTION SIX Certified Mineral Grants, Deeds, Land Sales, etc. [Plnts' Exh. 67.]

In support of this summary, plaintiffs listed no less than 15 witnesses to testify to the character of defendant McCrory and his father over the past several decades.[4] In addition to testimony, these witnesses would presumably sponsor the "backup" materials for Exhibit 67, which included newspaper articles from the Roosevelt eras

on behalf of the grandchildren plaintiffs. *See* plaintiffs' trial brief filed October 26, 1987, at 1. These efforts were later rejected by the Court.

2. *See also* "Motion to Alter Judgment Excluding Evidence" filed October 29, 1987, at 5–7. The psychologist, according to both plaintiffs' counsel and defense counsel, would testify to the "psychological profile" of defendant McCrory as one who appropriates whatever he wants regardless of right or wrong. Plaintiffs' counsel informed the Court that the psychologist/bondsman had also resided with plaintiff Robbie L. Roberts for a period of time prior to the trial of this matter in order to provide an insight into certain aspects of Ms. Roberts' behavior in recent years.

3. Significantly, this proffered evidence did not even relate to the defendant, but rather the *defendant's father*. According to plaintiffs' counsel, this would show that such violent traits were common in the defendant's family, *i.e.*, that defendant's character flaws ran in the family.

4. To compound matters further, plaintiffs' two experts in this area, the psychologist and the handwriting analyst, were not disclosed to the defense until plaintiffs' witness list was filed, which filing occurred well *after* the discovery cutoff period. *See* Section "C" *infra*.

[both Theodore and F.D.R.], past court filings from the above referenced cases, indictments, letters, contempt applications, affidavits and other documents of a hearsay nature. Aside from the hearsay nature of the underlying evidence, the entire evidentiary offering was contrary to Rules 403, 404(b), 608 and 609 of the Federal Rules of Evidence. Indeed, even when viewed in its best light, there was a *54-year gap*, from 1933 to 1987, in plaintiffs' "prior bad act" evidence. Moreover, the 1987 "evidence" involved a totally unrelated criminal case in which defendant McCrory was *acquitted on all counts*. No responsible, competent lawyer would ever consider offering such evidence.

Troubled by the convoluted and evasive nature of plaintiffs' case, the Court ordered plaintiffs' counsel to submit written proffers on several of her proposed witnesses. Many of these proffers revealed the hopeless and frivolous nature of plaintiffs' case. Two proffers in particular can be reprinted in their entirety as examples of the lack of knowledge of the Federal Rules of Evidence demonstrated by plaintiffs' counsel.

The proffer of witness Schockney B. Wilkinson, for example, reads as follows:

> Mrs. Wilkinson will testify as follows:
> 1. I am related to V.S. Tucker, the first husband of Robbie Roberts, by blood; he was my father's brother and my uncle.
> 2. In the mid–1960's, Uncle Vick told me that Lyndall McCrory [the defendant] had taken shots at him while they were hunting and it scared him to death; he said he would never go hunting with him again. [Proffer filed October 19th, 1987].

The inadmissibility of a hearsay statement made by "Uncle Vick" to his niece in the 1960's requires no further discussion.

In a similar vein, the plaintiffs' written proffer of the testimony of witness Tucker Wilkinson states as follows:

> 1. I am related to V.S. Tucker, the first husband of Robbie Roberts, by blood; he was my grandfather's brother.
> 2. Four or five years ago, Lyndall McCrory came to our nursery and land-scape business. At that time, he noticed that I had a .38 in my cash box.
> 3. He left the office to get his checkbook without saying anything else to me about it after I told him it was for protection.
> 4. When he returned, he pointed a .45 automatic at me and pulled the trigger. [Proffer filed October 19th, 1987].

Even assuming these events transpired, they had absolutely nothing to do with any issue in this lawsuit.

Plaintiffs also sought to introduce evidence concerning statements allegedly made by defendant James L. McCrory at a settlement negotiation meeting held on June 4, 1986. The proffers submitted by the parties placed the meeting and the statements squarely within the proscription of Federal Rule of Evidence 408, which generally prohibits the use of statements made in the context of compromise negotiations. Plaintiffs' counsel seemed totally unfamiliar with this rule or its underlying premise. Moreover, the statements were not damaging to the defendants' theory of the case.

Similarly, plaintiffs' counsel proposed to utilize a "computer model" during the trial of the case for the purpose of establishing the alleged present value of R.F. McCrory's estate. Even a cursory examination of the "computer model" revealed that it was riddled with inadmissible evidence. The oil and gas royalty figures in the model, for example, were based in part on hearsay statements made by R.F. McCrory to various people prior to his death. The "computer model" then assumed that all of the wells continued to produce at the same rate for 37 years, a completely unreasonable assumption. By utilizing such gimmicks, plaintiffs' counsel was able to inflate an estate which her client in 1958 acknowledged to be worth $1,400, and which the Oklahoma Tax Commission found to contain no such properties, into an alleged $30 million bonanza.

Plaintiffs' counsel also listed as exhibits for use at trial her own notes of interviews with witnesses, telephone messages from her own law offices, and her daytimer

records. *See e.g.*, plaintiffs' Exhibits 133, 134, 135. When asked of their purpose, plaintiffs' counsel stated that she intended to offer them as evidence of prior statements made by the witnesses in question, apparently to corroborate the in-court testimony of the witnesses. Even assuming *arguendo* that this was a legitimate use of the documents, such a strategy would have required plaintiffs' counsel to sponsor these documents as a witness in the very trial in which she was serving as an advocate. Although seemingly elementary, these evidentiary and ethical circumstances had not been considered by plaintiffs' counsel. *See* ABA Code of Professional Responsibility, Disciplinary Rule 5–102.

Moreover, as indicated previously, much of the property which plaintiff Roberts claimed to be part of her father's estate was the subject of a state court proceeding in Carter County, Oklahoma in 1979. That lawsuit was filed two years after the death of R.F. McCrory's wife, Montie Ray McCrory, who left virtually all of her property to defendant James L. McCrory. In her 1979 suit against defendant James L. McCrory, plaintiff Roberts, as she had in 1958, took the position that R.F. McCrory died intestate. The parties ultimately entered into a settlement agreement and a journal entry of judgment was entered which adopted the settlement agreement. The journal entry of judgment includes a finding that R.F. McCrory died intestate. As to those matters litigated in the 1979 quiet title suit against defendant McCrory, Ms. Roberts was unquestionably estopped from asserting them again.[5] Nevertheless, plaintiffs' counsel relentlessly pursued claims which were raised or should have been raised in the prior state court proceeding.

C. *Plaintiffs' Counsel's Noncompliance with the Court's Scheduling Order*

A review of the record also revealed that plaintiffs' counsel failed miserably in attempting to comply with the pretrial scheduling orders of the Court.

On March 2, 1987, Chief Judge Ralph Thompson entered a scheduling order in the grandchildren's case, *Yvonne Mount, et al. v. James L. McCrory*, CIV–86–2160–T. On April 22, 1987, Judge Thompson consolidated the grandchildren's case with Ms. Roberts' case (CIV–86–1571–T) and ordered that the scheduling order mentioned above be applicable to the consolidated cases. That scheduling order established the following deadlines:

1. Motions to join additional parties due by May 1, 1987.

2. Motions to amend pleadings due by May 1, 1987.

3. Plaintiff to submit final witness list by July 1, 1987.

4. Defendant to submit final witness list by July 10, 1987.

5. Plaintiff to submit final exhibit list by July 1, 1987.

6. Defendant to submit final exhibit list by July 10, 1987.

7. The discovery cutoff date was August 1, 1987.

8. Plaintiffs' final contentions due by July 1, 1987.

9. Defendants' final contentions due by July 10, 1987.

10. Dispositive motions to be filed by August 1, 1987.

11. Stipulations to be filed by August 30, 1987.

12. Motions *in limine* to be filed by August 30, 1987.

13. Proposed jury instructions to be filed by August 30, 1987.

14. Joint case statement to be filed by August 30, 1987.

---

**5.** In the 1979 lawsuit, Roberts did not make any claims against defendant McCrory as to a number of properties she now claims an interest in as heir of R.F. McCrory. Indeed, in the 1979 case, Roberts admitted that properties conveyed by R.F. McCrory before his death were gifts and part of his plan of estate distribution. In this lawsuit, she sought to include such properties in the alleged estate. Well settled principles of *res judicata* and merger provide that a party must assert all claims arising out of the same cause of action in a single lawsuit or they are forever barred. *Greater Oklahoma City Amusements, Inc. v. Moyer*, 477 P.2d 73 (Okla.1970).

15. Requested voir dire to be filed by August 30, 1987.

16. Trial briefs to be filed by August 30, 1987.

17. Objections to trial submissions to be filed within five (5) days of their filing.

18. The final pretrial order to be filed by August 30, 1987.

19. Plaintiff to initiate settlement discussions immediately and report settlement status by June 1, 1987.

This Court was assigned this case on June 22, 1987, and the case was placed on the Court's October 1987 trial docket. The October trial docket of this Court was called on October 7, 1987. At the time the docket was called, it was apparent to the Court that the parties had not complied with many of the pretrial deadlines, and that the case was far from ready for trial.[6] Rather than continue the case, the Court adjusted the position of this case on the Court's trial docket and held a series of early morning and afternoon conferences to prepare this case while other cases proceeded to trial. Pretrial conferences were held in this case on October 7, October 13, October 14, October 15, October 16, October 19, October 20 and November 2, 1987.

The Court also required counsel for both parties to submit affidavits identifying those areas in which they failed to comply with the Court's scheduling order, as well as any justification or mitigation for the noncompliance. The affidavits and other submissions of the parties reveal the following synopsis of plaintiffs' counsel's failure to comply with the pretrial orders of the Court.

Plaintiffs' counsel did not serve her final witness list, exhibit list and contentions on July 1, 1987, as required by the Court's scheduling order. Instead, without prior approval of the Court, plaintiffs' counsel submitted her witness list to defense counsel on September 3, 1987, sixty-four (64) days after it was due and *thirty-three (33) days after* the discovery cutoff. The list named fifty-three (53) fact witnesses and three experts. On September 16, 1987, seventy-seven (77) days late, plaintiffs' counsel filed her exhibit list. On September 22, 1987, more than fifty (50) days after the discovery cutoff, plaintiffs' counsel served defense counsel with supplements to both her witness and exhibit lists.

On September 29, 1987, in direct contravention of Chief Judge Thompson's scheduling order and Local Rule 17(D) of the Western District of Oklahoma, plaintiffs' counsel provided defense counsel with the first draft of the pretrial order, which was due one month earlier. Defense counsel returned it one day later. It was filed by plaintiffs' counsel on October 6, 1987.

Moreover, as admitted by plaintiffs' counsel in her submission of October 9, 1987, the following thirty-four (34) witnesses were noticed by plaintiffs' counsel *for the first time* in the final pretrial order:

Sara Barbour

Jean McCrory

Darrel Smithers

Noel Staley

Schockney Wilkinson

Don Young

Delphia Denny

Thelma Knight

Larry Alley, Custodian, First Nat'l Bank

Richard Croom, Custodian, St. Anthony's Hospital

Frank Baker

Betty Smith

J.B. Davidson

Ben Whitney

R.D. Sarratt

James Puckett

Bonnie Brewer

Beth Mooney

Larry Patten

---

**6.** As held at a later hearing and discussed further *infra* the Court found defendants' noncompliance with the scheduling orders to be substantially justified within the meaning of Rule 16(f) of the Federal Rules of Civil Procedure. Defendants' inability to file meaningful witness lists, exhibit lists and contentions was caused directly by plaintiffs' noncompliance. In fact, defense counsel timely filed a Motion to Dismiss based upon plaintiffs' failure to comply with the scheduled deadlines. *See* affidavit of Drew Neville and Russell Cook filed October 13, 1987.

Robert Long, Custodian, Memorial Hosp.

Michael Johnson

Charles Roos.

Janes Supan

Betty Joplin

Lydia Caldwell

Albert McCrory

Randall Holder

Greg Taylor

Matthew Ball

JoAnn Harper

Denver Davidson

T.C. Craighead[7]

Other failures acknowledged by plaintiffs' counsel in her affidavit of October 10, 1987, include the following:

Final contingencies [sic] due July 1, 1987, submitted September 20, 1987.

Stipulations, due August 30, 1987, submitted September 20, 1987.

Proposed instructions, due August 30, 1987, filed October 9, 1987.

Joint statement of case, due August 30, 1987, filed October 6, 1987.

Proposed findings and conclusions due August 30, 1987, filed October 9, 1987.

Pretrial order, due August 30, 1987, filed October 6, 1987.

Report of settlement discussions, due July 1, 1987, filed in this affidavit October 13, 1987.[8]

In short, plaintiffs' witness and exhibit lists, which were to be submitted thirty (30) days *before* the discovery cutoff, were served more than thirty (30) days *after* the discovery cutoff, thus denying defendants the right to conduct meaningful discovery. This also crippled defense counsel's ability to file meaningful contentions and motions and had a ripple effect on the preparation of the entire case for trial.

Although plaintiffs' counsel contended that she was "seduced" into believing she had a "gentleman's agreement" with defendants' counsel to waive her noncompliance with the scheduling order, this claim is not supported by the record and is flatly contradicted by the affidavits submitted by defense counsel. Moreover, it is not opposing counsel who must approve any modifications of the scheduling order, but rather the Court. *See* Local Rule 19 of the Western District of Oklahoma.

Even for those deadlines which plaintiffs' counsel did meet, the compliance was minimal at best. Probably the best example is the plaintiffs' answers to defendants' interrogatories. In an effort to try to identify and sort out the issues plaintiffs intended to pursue at trial, defense counsel served these interrogatories on plaintiffs on March 19, 1987. On July 8, 1987, defendants filed a Motion to Dismiss on the ground that plaintiffs had failed to answer the interrogatories. At the time the motion was filed, plaintiffs had not submitted any response. *After* the Motion to Dismiss was filed, plaintiffs served on defendants what they claimed to be answers. The answers filed by plaintiffs, which were not under oath, confounded both the Court and defense counsel in that they were evasive and uninformative, and failed to respond to the most important inquiries. *See e.g.*, Defendants' Reply to Interrogatories filed July 28, 1987.

Even more disturbing is the fact that plaintiffs then sought to use evidence at trial which should have been disclosed to defense counsel in response to the interrogatories. This spawned a portion of defendants' Motion in Limine filed October 2, 1987, requesting that the Court prohibit plaintiffs' counsel from offering any evidence on the subject of the interrogatories pursuant to the preclusionary sanctions of Rule 37, Fed.R.Civ.P. Further, the record also reflects that plaintiffs' counsel disclosed to the defendants for the first time on October 9, 1987, dozens of exhibits which plaintiffs intended to use at trial. This also became the subject of defendants' Motion in Limine. *See* List of Undisclosed Exhibits filed October 19, 1987.

In any Court in any district in the country, a record of noncompliance such as that set forth above is inexcusable. In the

---

7. *See* plaintiffs' compliance with Order of October 7, 1987, filed October 9, 1987, at 2–4.

8. *See* Affidavit of Jence Thomas, Esq. filed October 13, 1987.

Western District of Oklahoma, where for the last several years this district has consistently carried one of the heaviest weighted caseloads in the entire nation, such conduct by lawyers threatens to bring the judicial process to a halt and cannot be tolerated. While the Court could have simply declared plaintiffs to be without witnesses or exhibits due to their counsel's noncompliance,[9] the Court did not want to punish the clients for the misdeeds of their lawyer without careful inquiry and just cause. It was for this reason that the Court took defendants' motions under advisement and held the several pretrial hearings in question, as well as the bifurcated trial on the issue of the will, in an effort to determine if there were any meritorious claims hidden in the rambling and voluminous filings of plaintiffs' counsel. It eventually became obvious that there were none.

### D. *Summary Judgment*

On October 26, 1987, plaintiffs' counsel filed her Court-ordered trial brief setting forth her remaining claims and theories. On October 26, 1987, defendants filed their Motion for Summary Judgment which, as the Court noted on several occasions during these proceedings, should have been filed much earlier. On November 2, 1987, plaintiffs' counsel filed her response to the Motion for Summary Judgment. The response was not in compliance with Local Rule 14(B), which requires a specific format for the identification of the disputed facts in controversy. This was despite the fact that the Court had issued a written directive to counsel that the response must be in compliance with Local Rule 14 of the Western District of Oklahoma. *See* Order dated October 20, 1987. Instead, plaintiffs' counsel filed an evasive, rambling, and to a large degree unintelligible, statement of the remaining claims. The document also contained unrestrained attacks on both the Court and defense counsel. A review of the document reveals that even if there ever were any legitimate claims which

could have been filed on behalf of plaintiff Roberts, the claims were unquestionably barred by any applicable statutes of limitations, as well as the doctrines of laches and estoppel.

The limitation period for the plaintiffs' remaining actions are as follows:

Conversion of personal property: two years from the date of conversion. [12 O.S. § 95 Third.]

Action based on fraud: two years from the date the plaintiff knew or should have known the facts constituting the alleged fraud. [12 O.S. § 95 Third.]

Intentional infliction of emotional distress: two years from the date of injury. [12 O.S. § 95 Third; *Williams v. Lee Way Motor Freight, Inc.*, 688 P.2d 1294 (Okla.1984).]

Any other action for injury to the rights of the plaintiffs not arising from contract: 2 years from the date the cause of action accrued. [12 O.S. § 95 Third.]

Plaintiffs' counsel dismissed these time-barring defenses with typical conclusionary hype as follows:

The last threats were made in 1983, the first non-threatening communication came in April 1985, and plaintiffs filed within two years thereafter. The statute has not run. [Plaintiffs' Response to Defendants' Motion for Summary Judgment at 16–18.]

Plaintiffs' counsel concluded her "analysis" by stating: "Why do plaintiffs have the feeling that they are the only ones who understand how statutes of limitation work?" Viewed in its best light, plaintiffs commenced their lawsuit thirty (30) years after the death of R.F. McCrory and eighteen (18) years after the date the grandchildren claimed the estate was to be disbursed to them. No reasonable jury could have concluded this delay was justified, particularly on the part of plaintiff Roberts, who was the only remaining plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

---

**9.** For the imposition of preclusive sanctions, *see D & H Marketers v. Freedom Oil and Gas*, 744 F.2d 1443 (10th Cir.1984); *Hollis v. United*

*States*, 744 F.2d 1430 (10th Cir.1984); *Robert E. Abney, et al. v. William R. Patten, et al.*, CIV–84–44–A (W.D.Ok. October 2, 1987).

Moreover, as a practical matter, there was little left of plaintiffs' case following the Court's rulings on defendants' Motion in Limine. Apparently recognizing this, plaintiffs' counsel on October 29, 1987, filed a Motion to Alter Judgment Excluding Evidence pursuant to Rule 59 of the Federal Rules of Civil Procedure.[10] Rule 59, of course, has nothing to do with a trial court's pretrial rulings on motions *in limine*. To the contrary, it expressly deals with the issue of new trials and judgments. Nevertheless, plaintiffs' counsel filed a nine-page brief addressing itself to the "necessity" of the Court altering its *in limine* rulings pursuant to Rule 59. When questioned about this plainly frivolous filing at the hearing on November 2, 1987, plaintiffs' counsel dug in even deeper, claiming that "many courts" had recognized the propriety of utilizing Rule 59 to modify *in limine* evidentiary rulings. Based on that representation, the Court directed Ms. Thomas to file a listing of such authority. On November 3, 1987, plaintiffs' counsel filed a document entitled *"Authorities in Support of Motion to Alter Judgment Excluding Evidence."* The document consists almost entirely of irrelevant quotations from cases which have nothing to do with *in limine* evidentiary rulings made prior to trial. Rather, they relate, as the rule plainly states, to altering or correcting judgments. Moreover, the motion was filed by plaintiffs' counsel before any judgment was entered in the case. *See* Order of November 2, 1987.

In short, the conduct of plaintiffs' counsel in this case revealed a dangerous propensity for not only the assertion of frivolous claims, but also a dangerous absence of familiarity with the Federal Rules of Evidence and the Federal Rules of Civil Procedure.

On November 2, 1987, the Court held a hearing in this matter at which time it announced that defendants' Motion for summary Judgment, defendants' Motion to Dismiss, along with defendants' other

pending motions, would be granted. The Court also advised the parties that sanctions would be imposed. The Court prepared a minute order notifying the parties that a written order would follow. *See* Order of November 2, 1987. The jury was subsequently excused.

## III. PLAINTIFFS' COUNSEL'S ATTACKS ON THE COURT AND ON DEFENSE COUNSEL

Throughout these proceedings, plaintiffs' counsel made repeated, unrestrained and unsubstantiated attacks on the integrity of defense counsel and the Court. While it would be impossible in the context of this opinion to identify each and every such remark, a few examples from plaintiffs' Trial Brief and plaintiffs' Response to Defendants' Motion for Summary Judgment will suffice.

### A. *Plaintiffs' Trial Brief*

The following excerpts are taken from plaintiffs' Trial Brief filed October 26, 1987:

Roberts believes that McCrory has continued to make these fraudulent misrepresentations ever since and continues to fraudulently conceal them from her, with *the assistance of this and other courts.* [Plaintiffs' trial brief at 5]. [Emphasis added].

\* \* \* \* \* \*

Plaintiffs are shocked that *this court allows, condones, and encourages McCrory and Brown in their illegal activities.* [Plaintiffs' trial brief at 9]. [Emphasis added].

\* \* \* \* \* \*

Plaintiffs' counsel gave Defendants' counsel notice of the proposed use of Puckett in the spring of 1987 and had previously identified another handwriting expert, both verbally, *but certainly does not expect Defendants' counsel to ad-*

---

**10.** Rule 59 reads in pertinent part as follows: "Rule 59. New Trials; Amendment of Judgments

\* \* \* \* \* \*

(e) A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment."

*mit such.* [Plaintiffs' trial brief at 13]. [Emphasis added].

\*　　\*　　\*　　\*·　　\*　　\*

Plaintiffs were somewhat heartened that, although Mr. Cawley [defense counsel] did not mind ignoring Rule 11, F.R.C.P., in making his proffer of testimony to this court, he did draw the line at actually taking the stand and committing perjury. Brown and McCrory have no serious problems in this regard, and indeed Brown's testimony will more likely than not continue to reflect statements which are not true, with the obvious exception of his admissions of wrongdoing already made, which in his and McCrory's mind are not incidents of wrongdoing in the first place, as they feel they have a right to commit these unlawful acts, *which position this Court appears to endorse.* Indeed, Defendants' counsel, at the deposition of Albert McCrory, attempted everything possible to make the giving of this testimony difficult for Mr. McCrory, obviously hoping he would eventually refuse to testify at trial; Defendants' only hope of winning at trial is to obstruct the evidence, as it is so blatant [sic] unfavorable. [Plaintiffs' trial brief at 19]. [Emphasis added].

Plaintiffs' counsel concluded her trial brief with these observations:

These Plaintiffs have found no authority in any jurisdiction whatsoever in this century which supports this Court's erroneous, arbitrary, and capricious evidentiary rulings made before trial and for refusing to accept absent witness affidavits, for the sheer purpose of defeating Plaintiffs' valid claims, all in order to clear the Court's docket ...

These Plaintiffs have found no authority in any jurisdiction whatsoever in this century which supports this Court's blatant, arbitrary, and capricious violations of Plaintiffs' civil rights by (a) denying Plaintiffs the benefit of the supreme law of the land in violation of the supremacy Clause, Art. 6, cl. 2, U.S. Const. (although Plaintiffs do truly appreciate this Court's implicit finding, however, in denying federal trial court authority to

Plaintiffs, that egregious and fatal error can take place in the federal trial court) ... all in order to clear the Court's docket.

These Plaintiffs have found no authority in any jurisdiction whatsoever in this century which supports this Court's bludgeoning of the Plaintiffs with arbitrary and capricious threats of reprisal or dismissal, which he obviously intends to fulfill finally ... all in order to clear the Court's docket.

These Plaintiffs have found no authority in any jurisdiction whatsoever in this century which supports this Court's decision to revise and amend the Federal Rules of Evidence as to admissibility, relevance, or any other such determination ... all in order to clear the Court's docket. [Plaintiffs' Trial Brief at 27, 28.]

Again, the above are only representative samples of the irresponsible remarks contained in filings signed by plaintiffs' counsel. *See, e.g.,* Notice of Appeal filed November 30, 1987.

### B. *Plaintiffs' Response to Defendants' Motion for Summary Judgment*

The following excerpts appear in plaintiffs' Response to Defendants' Motion for Summary Judgment filed November 2, 1987:

This evidence has been erroneously excluded by a Court which seems determined to assist Defendants in perpetrating their fraudulent scheme and plan. *Plaintiffs suppose they should not be surprised to find that the Oklahoma Territory still protects the bandits who hide there.* [Response at 24]. [Emphasis added].

\*　　\*　　\*　　\*　　\*　　\*

Were McCrory's arguments thta [sic] Plaintiffs cannot produce the information (because he has concealed it from them) allowed to be carried to their logical extreme, involuntary manslaughter would be subject to capital punishment and the most intricately planned mass murders would walk away every time. Plaintiffs do not understand why this Court refus-

es to acknowledge the tort law in Oklahoma. [Response at 21].

\* \* \* \* \* \*

*Plaintiffs are horrified to realize that Oklahoma has returned to its former status of a hole-in-the-wall badlands where the robbers are protected by the system from the law.* [Response at 22]. [Emphasis added].

\* \* \* \* \* \*

How convenient for McCrory that *he is in a court which allows him to profit from his fraud because it has been expertly perpetrated.* [Response at 23]. [Emphasis added].

\* \* \* \* \* \*

When Defendants have failed to conceal all of the evidence showing that property still rests in R.F. McCrory's name after all these years, they take the ostrich position and claim that the evidence doesn't exist. *This is, of course, consistent with their fraudulent, deceitful, and willful concealment of all of this evidence throughout the case ...* [Response at 13]. [Emphasis added].

At various other times in the proceedings, plaintiffs' counsel accused defense counsel of presenting perjured testimony and obstructing justice by hiding relevant evidence. All of the charges were baseless. These scathing attacks on the Court and opposing counsel are in direct violation of the Code of Professional Responsibility. *See e.g.,* ABA Code of Professional Responsibility, Disciplinary Rules 7–106(C)(6) and 8–102(B); Ethical Considerations 7–37, 8–36.

The Court's first reaction to this seemingly unending diatribe, usually seen only in cases involving *pro se* litigants, was to determine whether or not the author of this document was actually an attorney. Ms. Thomas, at the hearing held on November 2, 1987, acknowledged that she was, in fact, the author of both of the above-referenced filings, and stated that she was admitted to practice in New York, New Jersey, Colorado and Oklahoma. When given an opportunity to explain the above referenced remarks, she made no attempt to mitigate her conduct. Instead, she endorsed the previous remarks. Moreover, when she filed her Notice of Appeal on November 30, 1987, she further escalated the level of her attacks on both opposing counsel and the Court.

## IV. SANCTIONS AGAINST PLAINTIFFS' COUNSEL

 In managing and controlling its ever-increasing caseload, the Court has the inherent and statutory power to sanction the defaulting party or an attorney by *sua sponte* dismissing the action. *Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *In Re Baker,* 744 F.2d 1438, 1442 (10th Cir.1984). In exercising this power, the Court has the authority to enforce its orders with a view to promptly processing and adjudicating its lawsuits. *Stanley v. Continental Oil Co.,* 536 F.2d 914 (10th Cir.1976). In this case, the record is clear that plaintiffs' counsel has made all types of unfounded accusations, and has bombarded the Court with frivolous filings and spurious litigating positions.

With regard to scheduling orders and trial preparation, the Court also has broad discretion in fashioning appropriate sanctions under Rule 16(f) for failure to comply with the pretrial orders of this Court. *American Medical Systems v. Picker International,* No. 85–1619, slip op. (10th Cir. March 30, 1987); *Albert O. Roy v. American Professional Marketing, Inc.,* 117 F.R. D. 687 (W.D.Ok.1987). As the Tenth Circuit stated in *Baker:*

> "[T]here can be no doubt that subsection (f), added as part of the 1983 amendments to Rule 16, indicates the intent to give courts very broad discretion to use sanctions where necessary to insure not only that lawyers and parties refrain from contumacious behavior, already punishable under the various other rules and statutes, but that they fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial." [744 F.2d at 1440.]

The *Baker* Court went on to state that the primary purpose for sanctions in the Rule

16 context is to insure reasonable management requirements for case preparation, with the compensation of adversely affected parties serving only a secondary purpose for the imposition of sanctions. *Id.* at 1441.

Similarly, the Court has broad discretion in fashioning appropriate sanctions for unethical and improper conduct in violation of Rule 11. Rule 11 was amended to "reduce frivolous claims, defenses or motions" and to deter "costly, meritless maneuvers," thus avoiding unnecessary delay and expense in litigation. *Donaldson v. Clark,* 819 F.2d 1551, 1556 (11th Cir.1987); *Chevron U.S.A., Inc. v. Hand,* 763 F.2d 1184 (10th Cir.1985); *D. & H. Marketers, Inc. v. Freedom Oil and Gas, Inc.,* 744 F.2d 1443 (10th Cir.1984). Sanctions under Rule 11 are thus appropriate where designed to discourage dilatory or abusive tactics and to help streamline the litigation process. *Donaldson,* 819 F.2d at 1556. While Rule 11 sanctions are typically imposed against counsel in the form of cost reimbursement measures, monetary sanctions payable directly to the Clerk of the Court have also been imposed. *Robinson v. Moses,* 644 F.Supp. 975 (N.D.Ind.1986); *Dominguez v. Figel,* 626 F.Supp. 368 (N.D.Ind.1986).

Based on the hardship imposed on the Court and opposing counsel in this matter as a result of (1) plaintiffs' counsel's failure to comply with the pretrial scheduling orders of this Court in violation of Rule 16(f), Fed.R.Civ.P., (2) plaintiffs' counsel's failure to comply with Local Rule 17 pertaining to the obligations of plaintiffs' counsel in preparing a pretrial order and Local Rule 14 pertaining to the requirements for a response to a Motion for Summary Judgment, (3) plaintiffs' counsel's spurious and unsubstantiated allegations of misconduct against opposing counsel and the Court in violation of Rule 11, (4) plaintiffs' counsel's frivolous filings, evidentiary offerings, and litigating positions in violation of Rule 11, and (5) plaintiffs' counsel's failure to adequately cooperate, communicate and prepare this case for trial or disposition, IT IS HEREBY ORDERED AS FOLLOWS:

1. Jence Thomas, counsel for plaintiffs, is sanctioned $5,000.00 in the following fashion:

(a) $1,000 pursuant to Rule 16(f) for failure to comply with the pretrial scheduling order of the Court, entered by Chief Judge Ralph Thompson March 2, 1987;

(b) $500 pursuant to Rule 11 for filing a frivolous trial brief on October 26, 1987, containing unwarranted positions and unrestrained attacks on opposing counsel and the Court;

(c) $500 pursuant to Rule 11 for filing on November 2, 1987, a frivolous response to defendants' Motion for Summary Judgment, which contained unwarranted positions and unrestrained attacks on opposing counsel and the Court and which was not in compliance with the Local Rules of this district regarding responses to summary judgment motions;

(d) $1,000 pursuant to Rule 11 for filing and pursuing a frivolous lawsuit on behalf of the grandchildren of R.F. McCrory (Civil Case No. 86–2160–P), wherein plaintiffs' counsel knew, or should have known, upon reasonable inquiry that she could not have established the existence or contents of a validly executed will or justify the claims of the plaintiffs within any applicable statute of limitations;

(e) $1,000 pursuant to Rule 11 for filing and pursuing a frivolous lawsuit on behalf of plaintiff Robbie L. Roberts, wherein plaintiff's counsel knew, or should have known, upon reasonable inquiry (1) that much of the evidence which counsel intended to rely upon in said case was inadmissible under the Federal Rules of Evidence and constituted frivolous evidentiary offerings; (2) that plaintiff Roberts' claims could not be justified within any applicable statute of limitations; and (3) that plaintiff Roberts' claims were barred by the doctrines of laches, collateral estoppel, or *res judicata.*

(f) $500 pursuant to Rule 11 for filing a frivolous "Motion to Alter Judgment Excluding Evidence" on October 29, 1987;

(g) $500 pursuant to Rule 11 for filing a frivolous document entitled "Authorities in Support of Motion to Alter Judgment Excluding Evidence," on November 3, 1987.

2. The Court directs that counsel for plaintiffs, Jence Thomas, stands reprimanded and that a copy of this Order be provided all other judges and magistrates of this Court and all bankruptcy judges for the Western District of Oklahoma. Further, copies will be provided the Clerk of this Court and the Bankruptcy Court for the district with instructions that the clerks file the Order in such a way that the name of Jence Thomas may be retrieved with respect to this case in the event she is delinquent or sanctionable in any case in the future.

3. The matter of Ms. Thomas' misconduct is referred to the appropriate disciplinary bodies of the Oklahoma Bar Association, the Colorado Bar Association, the New Jersey Bar Association and the New York Bar Association for whatever action they deem appropriate.

This Court finds distasteful the task of sanctioning members of the bar, and does so only rarely and reluctantly. Indeed, this is the first time this Court has imposed sanctions under Rule 11, and only the second occasion in which this Court has imposed monetary sanctions against counsel for inadequate trial preparation under Rule 16. *See* Order Imposing Sanctions, *Albert O. Roy v. American Professional Marketing, Inc.,* 117 F.R.D. 687 (W.D.Okla.1987). However, as the Tenth Circuit in *Baker* stated in its *en banc* opinion:

... we are dealing with a matter most critical to the court itself: management of its docket and avoidance of unnecessary burdens on the tax-supported courts, opposing parties or both. [744 F.2d at 1441.]

Echoing the words of the Tenth Circuit in *Baker,* orders such as this will serve as an appropriate sanction message to the lawyer involved and to the bar generally. *Id.*[11]

## V. SANCTIONS REQUEST AGAINST DEFENSE COUNSEL

During the litigation, the Court stated that it was also inclined to impose cost sanctions against defense counsel for failing to timely file a Motion for Summary Judgment. Due to this failure, plaintiffs' counsel was required to prepare a response to the defendants' Motion for Summary Judgment filed October 26, 1987, which was generated by the Court's scheduling order of October 20, 1987. Accordingly, the Court directed plaintiffs' counsel to file a statement of the costs associated with her preparation of a response to the Motion for Summary Judgment. Plaintiffs' response was filed on November 2, 1987. On November 3, 1987, plaintiffs' counsel filed a bill reflecting 33.8 hours of work associated with the response. On November 6, 1987, pursuant to Court order, defense counsel filed their objections to this bill. The objection is hereby SUSTAINED. As indicated previously, the plaintiffs' response to the defendants' Motion for Summary Judgment did not conform to Local Rule 14(B), and did not provide the Court with an objective statement of the facts allegedly in dispute. Instead, it was highly conclusionary, and contained repeated attacks on the integrity of defense counsel and the Court. Indeed, even if the Court were inclined to impose sanctions against defense counsel, it would be impossible to place any monetary value on plaintiffs' response. Accordingly, no sanctions will be imposed on defense counsel in connection with plaintiffs' response to defendants' Motion for Summary Judgment. However, defense counsel are reprimanded for failing to timely file a Motion for Summary Judg-

---

**11.** In computing the monetary sanctions imposed by this Order, the Court is aware that it has been estimated that a single hour spent by a federal judge on a case costs the government $600.00. *See Robinson v. Moses,* 644 F.Supp. 975 (N.D.Ind.1986). The sanctions imposed here are conservative in light of the dozens of wasted hours devoted to this matter by the Court.

ment which would have revealed, as the later Motion for Summary Judgment did, the complete absence of evidence in support of plaintiffs' case. While the Court will not look favorably upon any application filed by defense counsel for recovery of costs pursuant to 42 U.S.C. § 1988, monetary sanctions are inappropriate under the circumstances of this case.[12]

## VI. CONCLUSION

In short, plaintiffs in this case attempted in federal court, under the rubric of tort claims, to do what Oklahoma law prohibits them from doing at this late date, *i.e.*, in the case of the grandchildren, claiming to be beneficiaries of R.F. McCrory's will, and in the case of plaintiff Roberts, claiming to be McCrory's intestate heir. Under plaintiffs' twisted theories of recovery, disgruntled descendants could file suits of this nature in federal court decades after a relative's death, ignoring completely the state's probate procedure for processing such claims. Moreover, the plaintiffs' litigation efforts were carried out by an attorney who recklessly disregarded the local rules of this district, controlling case law, the Federal Rules of Evidence, the Federal Rules of Civil Procedure and the Code of Professional Responsibility. Accordingly, IT IS HEREBY ORDERED:

1. Defendants' Motion to Strike Plaintiffs' Witness and Exhibit Lists filed September 17, 1987, is GRANTED.

2. Defendants' Motion to Dismiss for failure to comply with the pretrial scheduling order and failure to answer Interrogatories filed July 8, 1987, is GRANTED, with prejudice.

3. All other aspects of defendants' Motion in Limine filed October 2, 1987, not previously ruled upon, are hereby GRANTED.

4. Defendants' Motion for Summary Judgment filed October 26, 1987, as to

plaintiffs' remaining claims, is hereby GRANTED.

5. Sanctions are imposed against plaintiffs' counsel in accordance with the terms of Section IV of this Order. The monetary sanctions of $5,000.00 are to be paid by plaintiffs' counsel to the Clerk of this Court within thirty (30) days of the date of this Order.

6. A copy of this opinion is to be forwarded to all U.S. District Court Judges, Magistrates and Bankruptcy Judges in the Western District of Oklahoma, as well as the appropriate disciplinary authorities of the Oklahoma, Colorado, New York and New Jersey Bar Associations.

---

12. The Court is somewhat sympathetic with the plight of defense counsel in this case, inasmuch as it was difficult to come to grasps with the nebulous and convoluted nature of plaintiffs' various theories. This, coupled with the fact that defendants' noncompliance with the scheduling orders of the Court was directly caused by the conduct of plaintiffs' counsel, has persuaded the Court that monetary sanctions against defendants' counsel would be inappropriate.