No. 89-116

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

JOHN J. D'AGOSTINO and JOANN M.
D'AGOSTINO, husband and wife,

        Third-Party Plaintiffs and Appellants,

  -vs-

BURNEAL C. SWANSON, the same person as Neal Swanson
and Neil Swanson,

        Third-Party Defendant, Counterclaimant
        and Respondent.

APPEAL FROM: District Court of the Eighteenth Judicial District,
              In and for the County of Gallatin,
              The Honorable Byron L. Robb, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Edmund P. Sedivy, Jr.; Morrow, Sedivy & Bennett,
        Bozeman, Montana

    For Respondent:

        H. A. Bolinger, Bozeman, Montana

Submitted on Briefs: Oct. 13, 1989

Decided: January 4, 1990

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

This appeal arises out of a real property dispute involving several parties, including appellants, John J. and Joann M. D'Agostino, and respondent, Burneal C. Swanson. The District Court of the Eighteenth Judicial District, Gallatin County, granted partial summary judgment against the D'Agostinos and dismissed their third-party complaint against Swanson. After a hearing on Swanson's counterclaim, the court held in favor of Swanson, concluding that the D'Agostinos breached written covenants against encumbrances, committed fraud by concealing material facts in the sale of real property, breached the covenant of good faith and fair dealing and improperly joined Swanson as a party to the action. The court entered judgment against the D'Agostinos in the amount of $6,953 as attorney's fees, $761 as costs and $5,000 as punitive damages. The D'Agostinos appeal. We affirm.

The issues are as follows:

1. Did the trial court err in granting partial summary judgment to Swanson on the ground that the claims alleged in the D'Agostinos' third-party complaint were barred by the statute of limitations?

2. Did the trial court err in finding that the D'Agostinos improperly joined Swanson as a party to the action?

3. Did the trial court err in finding that the D'Agostinos were liable on the counterclaims brought by Swanson?

In 1977, appellants, John J. and Joann M. D'Agostino, purchased the Westwood Motel, located on Lots 3, 4, 5 and 6 of Block 26 of the Original Townsite to West Yellowstone,

Montana. The motel property consisted of a large main building and several small cabins.

The D'Agostinos purchased the property from Robert and Vivian Schaap, who had owned the motel since 1974. At the time the Schaaps purchased the property, four cabins sat partially on Lot 3 and partially on Lot 4. The Schaaps consolidated these four cabins into two larger units and moved them to the west, onto Lot 4, aligning them with the east side of an existing cabin. It appears that the Schaaps believed that this consolidation and realignment completely removed the structures from Lot 3, although they did not complete a survey to determine the exact boundary line between Lots 3 and 4.

In 1979, the D'Agostinos decided to sell Lot 3. Prior to the sale, John D'Agostino and his realtor, John Costello, sought to determine the line between Lots 3 and 4 by measuring from a survey marker on an adjoining lot. They observed that the Schaap cabins were very close to the line and that some cement steps and small cupolas over the doors obviously encroached onto Lot 3. Later, D'Agostino talked to Donna Young, who had possessed the property from 1949 to 1965 and who, in 1979, still held the titile to the lots. Young cautioned D'Agostino that the cabins encroached upon Lot 3.

The D'Agostinos sold Lot 3 to Swanson in 1979. The agreement for sale of the lot warranted title "free and clear of all encumbrances" and provided that the D'Agostinos would obtain title insurance "with no exceptions." Because the contract was entered into in the winter when, due to the amount of snow on the ground, a survey was impracticable, the agreement provided that the D'Agostinos would have the property surveyed as soon as possible in the summer months. The D'Agostinos failed to undertake the survey.

Swanson paid a total of $30,000 for the lot. He put $3,000 down when the purchase agreement was executed and paid the remaining $27,000 in May, 1979. Upon payment of the entire purchase price, the D'Agostinos delivered a full warranty deed to Swanson.

At the time the parties entered into the purchase agreement, D'Agostino represented and Swanson believed that Lot 3 was a vacant lot and that, with the exception of the cement slabs and cupola overhangs, none of the cabins encroached upon it. In order to accommodate the problem of entrance to the cabins, the agreement included a two-year provision allowing the D'Agostinos and their motel guests a right of access to and from the cabins.

In early June, 1981, Swanson gave written notice to the D'Agostinos, reminding them that the right of access would expire on October 15, 1981, and asking them to inform any possible purchasers of the motel of the access problems. In response, John D'Agostino approached Swanson with a written easement grant, which provided a permanent easement and right of encroachment over Lot 3. Swanson refused to sign the grant because he wanted all of Lot 3 for development.

Shortly thereafter, Swanson and D'Agostino measured the lot line. Swanson testified that they both agreed that the cabin structures themselves encroached onto Lot 3. D'Agostino refuted Swanson's assertion and testified that the cabins did not appear over the boundary line. The District Court specifically found that Swanson's testimony was more credible. The court also found that this was the first Swanson knew of the actual cabin encroachment, while D'Agostino knew of the problem all along.

On June 15, 1981, the D'Agostinos sold Lots 4 through 6 to Atanas and Eileen Markov. In 1982, the Markovs hired a surveyor to check the boundary line between Lots 3 and 4. On

- 4 -

July 6, 1982, the surveyor reported that the cabins in question encroached approximately 2 to 3 feet upon Lot 3 and the cupolas even further.

In March, 1983, the Markovs filed suit against the D'Agostinos and their realtor, Costello, alleging fraud, deceit and concealment. On February 24, 1984, the D'Agostinos filed a cross-claim against Costello and a third-party complaint against Swanson. In the third-party complaint, the D'Agostinos alleged that the encroachment was a mutual mistake and sought reformation or rescission of the contract or a declaratory judgment for an easement.

Swanson answered the D'Agostino's third-party complaint in April, 1984. In December, 1985, he amended the answer and counterclaimed against the D'Agostinos, alleging that the D'Agostinos breached the purchase agreement, the warranty deed and the implied covenant of good faith and fair dealing, and that the D'Agostinos fraudulently concealed material facts. Swanson sought general and punitive damages as well as costs and attorney's fees.

In February, 1987, the court granted partial summary judgment to Swanson and dismissed the D'Agostinos third-party complaint against him, holding that the D'Agostinos' claims were barred by the statute of limitations and that the D'Agostinos did not present a justiciable claim against Swanson. The court denied the D'Agostinos' subsequent motion to amend the third-party complaint.

On March 31, 1987, the jury trial on the Markovs' complaint commenced. Following a week-long trial, the jury returned a verdict in the amount of $53,050 in favor of the Markovs and against the D'Agostinos. The jury held the realtor, Costello, free from liability on any claims against him by either the Markovs or the D'Agostinos. To settle the

judgment, the cabins were moved off Lot 3 and onto vacant parcels that were available on the motel grounds.

On December 29, 1987, the District Court conducted a hearing on Swanson's counterclaim. Both Swanson and John D'Agostino testified. After the proceeding, the District Court issued findings of fact and conclusions of law. The court held that the D'Agostinos had breached the covenant against encumbrances and the covenant of good faith and fair dealing as well as committed fraud and improperly joined Swanson as a party to the litigation. The court awarded Swanson attorney's fees of $6,953 and costs of $761. The court reasoned that, although the written contract between Swanson and the D'Agostinos contained no provision for attorney's fees, the award in this case was needed to make Swanson whole. The court also found that the D'Agostinos continued actions and legal proceedings against Swanson were "ill-advised, frivolous, fraudulent, malicious and oppressive," thereby entitling Swanson to punitive damages of $5,000 to deter the D'Agostinos from such further conduct. The D'Agostinos appealed to this Court.

I

Did the trial court err in granting partial summary judgment to Swanson on the ground that the claims alleged in the D'Agostinos' third-party complaint were barred by the statute of limitations?

The D'Agostinos' third-party complaint alleged that they entered into an agreement with Swanson for the sale and purchase of Lot 3 for $30,000. The complaint further alleged that when they executed the agreement the parties were under the mistaken belief that three cabins were located on Lot 4 when in fact the structures partially encroached upon Lot 3. The D'Agostinos sought, by way of reformation or rescission

of the contract or a declaratory judgment, an easement from Swanson to correct the "mistake."

The District Court granted summary judgment to Swanson and dismissed the D'Agostinos' third-party complaint, holding that the claims alleged by the D'Agostinos were barred by § 27-2-203, MCA, which provides as follows:

> The period prescribed for the commencement of an action for relief on the ground of fraud or mistake is within 2 years, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake.

The D'Agostinos argue that the District Court applied the incorrect statute of limitations. They maintain that the proper statute to apply in this case is § 27-2-202(1), MCA, which provides an eight-year limitations period for actions on written contracts.

The D'Agostinos base their argument on Thielbar Realties, Inc. v. National Union Fire Ins. Co. (1932), 91 Mont. 525, 9 P.2d 469. In Thielbar, the plaintiff's property was damaged by fire. When the insurance company refused to pay the resulting claim for damages because the insurance policy contained a scrivener's error that incorrectly described the legal location of the property, plaintiff brought an action against the company. The insurance company argued that the action was barred by the two-year statute of limitations governing suits based on mistake. This Court disagreed. We held that the limitations period prescribed for actions based on written contracts applied because reformation of the drafting mistake was merely auxilary to the action's main purpose, which was to enforce the written contract.

The present case is distinguishable. The D'Agostinos did not commence this action to enforce the written contract.

- 7 -

How could they? Swanson had completely performed his side of the agreement. There was simply nothing for the D'Agostinos to enforce.

The purpose of the D'Agostinos' lawsuit against Swanson was not to enforce the agreement. Rather, the purpose of the lawsuit was to modify the agreement in order to obtain an easement over Lot 3. The D'Agostinos sought to justify the action by alleging a mutual mistake of fact. Because mutual mistake was the essence of the action, the two-year statute of limitations pertaining to actions seeking relief on the ground of mutual mistake governed the lawsuit.

The D'Agostinos next argue that, even if the two-year limitations period applied, the District Court improperly granted summary judgment because a genuine issue of material fact existed concerning the date upon which they discovered the mistake, i.e., the encroachment. The D'Agostinos maintain that they did not actually learn that the cabins encroached upon Lot 3 until July, 1982, when a professional survey of the lot was completed. Therefore, the D'Agostinos argue, when they filed their action against Swanson in February, 1984, they did so within the two-year period prescribed by the statute.

The party moving for summary judgment under Rule 56, M.R.Civ.P., bears the burden of proving that he is entitled to a judgment as a matter of law. To do this, he must demonstrate the complete absence of any genuine issue of material fact. All reasonable inferences that may be drawn from the offered proof must be drawn in favor of the party opposing summary judgment. Cereck v. Albertson's, Inc. (1981), 195 Mont. 409, 411, 637 P.2d 509, 510-11.

Examining the evidence in the light most favorable to the D'Agostinos, it appears that, at the time of the motion for summary judgment, a genuine issue of material fact may

have existed regarding the D'Agostinos actual discovery of the encroachment. However, the statute of limitations for actions based on mutual mistake does not depend on actual discovery of the alleged mistake before it begins to run. Rather, the limitations period begins to run when the facts are such that the party bringing the action would have discovered the mistake had he exercised ordinary diligence. Gregory v. City of Forsyth (1980), 187 Mont. 132, 136, 609 P.2d 248, 251. Therefore, when it ruled upon the statute of limitations issue, the District Court was not required to determine at what point the D'Agostinos obtained actual knowledge of the encroachment.

In the present case, the contract between the D'Agostinos and Swanson required the D'Agostinos to survey the property in the summer of 1979. Had the D'Agostinos complied with the contractual terms and completed the survey they would have discovered that the cabins sat partially on Swanson's lot. Instead, they chose not to undertake the survey. Through their own failure to diligently perform the contract, the encroachment problem did not become universally known until 1982, when the Markovs completed a survey of the property. We hold that the statute of limitations began to run in the summer of 1979, the time when the D'Agostinos would have discovered the encroachment had they diligently complied with the contractual terms. Because the D'Agostinos did not file their third-party complaint against Swanson until 1984, the District Court correctly concluded that the action was barred by the statute of limitations.

## II

Did the trial court err in finding that the D'Agostinos improperly joined Swanson as a party to the action?

The District Court found that the D'Agostinos unjustifiably joined Swanson as a party to the lawsuit. The

court further found that the legal proceedings the D'Agostinos instituted against Swanson were "ill-advised, frivolous, fraudulent, malicious and oppressive." The D'Agostinos argue that such findings constituted an improper determination of a claim for malicious prosecution when such a claim was not an issue before the court. We do not agree.

Although the D'Agostinos are correct in their contention that the common law tort of malicious prosecution was not before the District Court, the court did not err in finding that the D'Agostinos improperly joined Swanson in the action. This finding constituted an appropriate exercise of the District Court's power to supervise litigation and to sanction parties, their attorneys or both under Rule 11, M.R.Civ.P., for bringing actions that are not well grounded in fact or warranted by existing law or that are brought for improper purposes, such as harassment or delay.

With one minor exception, which is not pertinent to this opinion, Rule 11, M.R.Civ.P., is identical to Rule 11, F.R.Civ.P. The rule provides:

> Every pleading, motion, or other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading,

> motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, <u>the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.</u> (Emphasis added.)

Rule 11, M.R.Civ.P.

The purpose of Rule 11 is to "discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." Rule 11, F.R.Civ.P. advisory committee note. Although costs and attorney's fees may be awarded to the party opposing an action that violates Rule 11, the rule must not be viewed simply as a fee-shifting device. Compensation is but one aim of Rule 11. The more important goal is punishment for wasteful and abusive litigation tactics in order to deter the use of such tactics in the future. Donaldson v. Clark (11th Cir. 1987), 819 F.2d 1551, 1556, ("Whether sanctions are viewed as a form of costshifting, compensating parties injured by vexatious or frivolous litigation by Rule 11, or as a form of punishment imposed on those who violate the rule, the imposition of sanctions pursuant to Rule 11 is meant to deter attorneys from violating the rule."). See also Brown v. Federation of State Medical Boards (7th Cir. 1987), 830 F.2d 1429, 1438, ("An even more important purpose [than compensation] is deterrence."); Westmoreland v. CBS, Inc. (D.C. Cir. 1985), 770 F.2d 1168, 1180, ("Rule 11 serves a dual purpose: punishment and deterrence.").

- 11 -

The rule provides two grounds for sanctions. The first is found in the "frivolousness clause," which requires the imposition of sanctions if a pleading or other paper is not 1) well grounded in fact; or 2) warranted by existing law or a good faith argument for the extension, modification or reversal of existing law. The standard for determining whether a pleading has a sufficient factual or legal basis is reasonableness under the circumstances. State ex rel. Sorenson v. Roske (Mont. 1987), 745 P.2d 365, 368, 44 St.Rep. 1854, 1857; Zaldivar v. City of Los Angeles (9th Cir. 1986), 780 F.2d 823, 830-31; Eastway Constr. Corp. v. City of New York (2d Cir. 1985), 762 F.2d 243, 254.

The second ground for imposing sanctions is found in the "improper purpose clause." If a pleading or other paper is interposed for an improper purpose, such as harrassment, delay or increasing the cost of litigation, sanctions must be imposed. The standard for determining whether a party acted with an improper purpose is also an objective one, that is, reasonableness under the circumstances. Brown, 830 F.2d at 1436; Zaldivar, 780 F.2d at 831; Eastway, 762 F.2d at 254.

The federal courts have adopted divergent standards of review for Rule 11 cases. Some apply a clearly erroneous standard to the district court's findings of fact but subject the conclusions of the law to de novo review. Brown, 830 F.2d at 1434; Zaldivar, 780 F.2d at 828. Others review the district court's findings of fact under an abuse of discretion standard, while reviewing de novo those questions involving the legal sufficiency of a plea or motion. Donaldson, 819 F.2d at 1551; Westmoreland, 770 F.2d at 1174-75. Still others utilize an abuse of discretion review of both findings of fact and conclusions of law. Kale v. Combined Ins. Co. of America (1st Cir. 1988), 861 F.2d 746,

758; Thomas v. Capital Sec. Services, Inc. (5th Cir. 1988), 836 F.2d 866, 872.

This Court will give the district courts wide latitude to determine whether the factual circumstances of a particular case amount to frivolous or abusive litigation tactics, for, as noted in Westmoreland, 770 F.2d at 1174, "[t]he district court has tasted the flavor of the litigation and is in the best position to make these kinds of determinations." We therefore adopt a standard of review that combines the standards utilized by the federal courts. A district court's findings of fact will be overturned if clearly erroneous. The court's legal conclusion that the facts constitute a violation of Rule 11 will be reversed if the determination constitutes an abuse of discretion. We will review the case de novo only if the violation is based on the legal sufficiency of a plea or motion.

Once the district court determines that a case has no merit or has been commenced for an improper purpose, the mandatory language of the rule requires the court to impose sanctions on the offending party, his counsel or both. Thomas, 836 F.2d at 876; Brown, 830 F.2d at 1434 n.3; Westmoreland, 770 F.2d at 1174-75. Failure to impose sanctions when circumstances reveal that the rule has been violated will be deemed reversible error. Westmoreland, 770 F.2d at 1175.

On the other hand, the type of sanction imposed for a violation of Rule 11 is uniquely within the discretion of the district court. Thomas, 836 F.2d at 876-78; Donaldson, 819 F.2d at 1556-57; Westmoreland, 770 F.2d at 1175. Unlike Rule 37, M.R.Civ.P., which enumerates specific kinds of sanctions that may be imposed for discovery abuses, Rule 11 requires only that the district court impose "an appropriate sanction." Thus, the court is accorded great flexibility in

tailoring sanctions so that it may prescribe the most effective disciplinary action warranted by the circumstances of each case. Rule 11, F.R.Civ.P. advisory committee note. We will overturn the form and amount of the sanction imposed by the district court only if the court has abused its discretion. Brown, 830 F.2d at 1434; Zaldivar, 780 F.2d at 828.

The federal courts have fashioned a myriad of sanctions to deal with Rule 11 violations. Sanctions have not been limited to the payment of attorney's fees and costs, but have included fines to the court, Roberts v. McCrory (W.D.Okl. 1987), 693 F.Supp. 998; or a combination of attorney's fees and fines, Dominguez v. Figel (N.D.Ind. 1986), 626 F.Supp. 368. Sanctions have also been somewhat creative, including ordering the offending attorneys to appear at a hearing to show cause why they should not be suspended from practice, Kendrick v. Zanides (N.D.Cal. 1985), 609 F.Supp. 1162; ordering payment of interest on a judgment delayed by frivolous filings, Davis v. Veslan Enters. (5th Cir. 1985), 765 F.2d 494; directing the distribution of a copy of the opinion ordering sanctions to every member of the offending attorneys' firm, Huettig & Schromm, Inc. v. Landscape Contractors Council (N.D.Cal. 1984), 582 F.Supp. 1519, aff'd (9th Cir. 1986), 790 F.2d 1421; and directing the distribution of a copy of the order to all U.S. District Court judges, magistrates and bankruptcy judges in the district in which the offending conduct occurred, Roberts, 693 F.Supp. at 1011.

In the present case, the District Court found that the D'Agostinos acted in bad faith when they joined Swanson as a third-party defendant in the present action. This finding is not clearly erroneous but is supported by substantial

- 14 -

credible evidence. These facts are best summed up in the following findings:

16. Notwithstanding Swanson had nothing to do with the motel dispute, and that D'Agostinos had been told and had repeatedly observed themselves that the cabins were over or very close to the boundary line, and that D'Agostinos had failed to ever obtain a survey, and that Swanson had gratuitously permitted D'Agostinos to use lot 3 for access to said cabins and to plow snow onto it for several years and even extended the time, D'Agostinos sued Swanson via a third party complaint . . .

21. D'Agostinos knew long before filing the third party complaint against Swanson that there was no mutual mistake as to encroachment of the cabins onto lot 3, because the truth was D'Agostinos were to obtain an accurate survey to determine such fact, and if there was [an] encroachment, to correct it.

Absolutely no legitimate purpose was served by joining Swanson to this lawsuit. We will not tolerate the audacity of a seller who, after warranting title free and clear of all encumbrances, believes he can, without impunity, bring legal action against the buyer when it is discovered that the title is not free and clear but is encumbered by an encroachment on the property. The D'Agostinos' claim that Swanson agreed to purchase less than all of Lot 3 because, for a limited period of time, he gratuitously allowed them to use the lot for access to the cabins is specious at best. We agree with the District Court that the D'Agostinos unjustifiably dragged Swanson into this action and that such conduct was "ill-advised, frivolous, malicious and oppressive."

While a finding of subjective bad faith is not required when determining the existence of a Rule 11 violation, such a finding is relevant when deciding the nature and severity of the appropriate sanction. Rule 11, F.R.Civ.P. advisory committee note; Lieb v. Topstone Industries, Inc. (3d Cir.

1986), 788 F.2d 151, 157. In the present case, the District Court awarded attorney's fees and costs to compensate Swanson and a $5,000 lump sum to deter the D'Agostinos from future similar conduct. Although the District Court referred to the lump sum award as punitive damages, such reference was a misnomer. The entire monetary award, including attorney's fees and costs, constituted sanctions under Rule 11. Considering the fact that the District Court found that the D'Agostinos acted in bad faith, the form and amount of sanctions imposed were not an abuse of discretion.

Should a question arise regarding the propriety of discussing Rule 11 on appeal when it has not been discussed at the trial level, we remind the district courts, the members of the bar and their clients that the language of Rule 11 is mandatory. If a district court finds that a pleading or motion is groundless or filed for an improper purpose, the court <u>shall</u> impose an appropriate sanction. Here, the District Court specifically found that Swanson's joinder was frivolous and malicious. Once the court made this finding, it was required by Rule 11 to sanction the D'Agostinos, their attorney or both.

As a final observation, we note that the D'Agostinos received adequate notice and opportunity to be heard on this question. At both the District Court and this Court, they argued the issue of the legitimacy of the legal proceedings against Swanson. No purpose would be served by remanding this case to the District Court to allow rebriefing of an issue that has already been argued.

We affirm the monetary sanction imposed by the District Court.

## III.

Did the District Court err in finding that the D'Agostinos were liable on the counterclaims brought by Swanson?

Because the District Court's monetary award to Swanson was justified under Rule 11, M.R.Civ.P., we need not discuss whether the court erred in concluding that the D'Agostinos breached the covenant against encumbrances and committed fraud in the sale of real property.

Affirmed.

_____
                    Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

- 17 -