# WILLIAM M. WISE and DONNA M. WISE, Plaintiffs and Respondents,
## v.
# WILLIAM J. SEBENA, Defendant and Appellant.

No. 90-534.
Submitted on briefs Feb. 28, 1991.
Decided Mar. 28, 1991.
248 Mont. 32.
808 P.2d 494.

Kevin V. Vainio, Butte, for defendant and appellant.

John C. Brown, Cok & Wheat, Bozeman, for plaintiffs and respondents.

JUSTICE HARRISON delivered the Opinion of the Court.

William J. Sebena appeals from a judgment entered January 23, 1990, by the District Court of the Eighteenth Judicial District, Gallatin County. The District Court denied summary judgment to Sebena on his counterclaims and awarded summary judgment on the issue of attorney's fees to plaintiffs William M. Wise and Donna M. Wise in their action to foreclose on a real estate contract. We affirm.

Sebena presents the following issues:

1. Did the District Court err by ruling in plaintiffs' favor on Sebena's summary judgment motion to recover under a bad faith claim?

2. Did the District Court err by failing to apply Rule 11, M.R.Civ.P, sanctions to plaintiffs?

3. Did the District Court err by granting summary judgment to plaintiffs on the issue of attorney's fees?

### Summary of Facts

On November 12, 1974, William J. Sebena, defendant, agreed to

buy residential property in Bozeman, Montana, from William M. Wise and Donna M. Wise, plaintiffs. According to the Contract of Sale, Sebena was obligated to pay the purchase price of $27,000 with a down payment of $7,779.40 and monthly installments of $150.00 at six per cent interest on the $19,220.60 balance. The escrow agent for the contract was First National Bank of Bozeman.

The Contract of Sale also provided:

1. Plaintiffs were to give Sebena notice that payments were being made by a third party under an underlying mortgage.

2. Plaintiffs were required to purchase a title insurance policy, to be deposited in the escrow account, showing that they had good and merchantable title to the property subject to the underlying mortgage.

3. In the event of non-payment of installments, after thirty days plaintiffs had to provide Sebena with written notice of non-payment. Sebena had another thirty days to make up any delinquent payments, after which plaintiffs could accelerate all payments if the arrearages were not received. Sebena had sixty days after notice of acceleration to pay the remaining balance.

4. Once Sebena had paid one-half of the balance of the contract, the contract could only be terminated by a mortgage foreclosure action.

5. In the event of litigation concerning the contract, the successful party was entitled to reasonable attorney's fees.

On December 4, 1981, Sebena wrote plaintiffs a letter stating that because the balance owed on the contract had been reduced to one-half the purchase price, the contract could only be foreclosed as a mortgage. Sebena also notified plaintiffs that a title insurance policy had not been deposited into escrow. Before notification, plaintiffs believed that a title insurance policy had been deposited into escrow at closing. Sebena also inquired about the status of the underlying mortgage payments.

In October, 1982, plaintiffs purchased a title insurance policy guaranteeing clear and marketable title to the property, but did not deposit the policy into the escrow account as required by the Contract of Sale. Plaintiffs notified Sebena that they had purchased title insurance.

Throughout the period subsequent to the signing of the Contract of Sale, Sebena was repeatedly late with installment payments,

resulting in some fifteen letters being sent to Sebena requesting that he bring payments current. Sebena failed to make January, February, March, and April, 1988, payments. On May 2, 1988, plaintiffs sent Sebena a Notice of Default, giving Sebena thirty days to pay the arrearages.

After Sebena failed to cure default within the thirty-day period, on June 9, 1988, plaintiffs sent Sebena a Notice of Acceleration, allotting Sebena sixty days to pay the remaining $5,917.11 balance due under the contract before plaintiffs would begin a foreclosure action.

Within the sixty-day period, on August 9, 1988, Sebena notified plaintiffs that he had tendered the entire remaining balance to the escrow agent and would not release final payment unless he could review the title insurance policy required by the contract.

On August 31, 1988, plaintiffs sent the escrow agent the 1982 title insurance policy in the amount of $27,000 showing clear and marketable title in plaintiffs' names. At the same time, plaintiffs sent the escrow agent a "Commitment of Title Insurance," showing that plaintiffs still had clear and marketable title to the property as of August 13, 1988.

Sebena was not satisfied with the 1982 insurance policy and 1988 title commitment and instructed the escrow agent not to release final payment until a title insurance policy in his name, rather than plaintiffs' names, was delivered to escrow.

On September 6, 1988, the escrow agent informed plaintiffs of Sebena's request. Plaintiffs offered to purchase a title insurance policy in Sebena's name based upon the 1988 commitment of Title Insurance. A representative of the title insurance company met with Sebena to explain that title to the property was clear and that plaintiffs could not release the policy insuring the property in Sebena's name until the final payment was released and the warranty deed to Sebena recorded.

Sebena expressed concern about the underlying obligation to the property. A copy of the prior obligation and its release, the Satisfaction of Mortgage, recorded on May 9, 1977, was provided to Sebena. Sebena still refused to release final payment and insisted that plaintiffs purchase a title insurance policy insuring title in plaintiffs' names and reflecting Sebena as the contract owner.

On October 7, 1988, plaintiffs gave Sebena until October 16, 1988, to release final payment. Sebena apprised the escrow agent that he would release final payment if plaintiffs provided him with a copy of the Satisfaction of Mortgage for the underlying contract, which

Sebena had already received from the title insurance company agent. On October 19, 1988, plaintiffs gave Sebena another copy of the Satisfaction of Mortgage. Plaintiffs gave Sebena until 5:00 p.m. on October 20, 1988, to release final payment, a deadline which Sebena did not meet.

On October 28, 1988, plaintiffs filed a foreclosure action. Plaintiffs delivered a title policy insuring title in their names and reflecting Sebena as the contract owner to the escrow account on October 31, 1988. On November 1, 1988, Sebena released final payment and recorded the Warranty Deed, rendering plaintiffs' foreclosure action moot. Before plaintiffs could dismiss the foreclosure action, Sebena counterclaimed for breach of the implied covenant of good faith and fair dealing and requested Rule 11 sanctions.

On September 15, 1989, plaintiffs moved to amend their complaint to reflect that Sebena had released the disputed payment and moved for summary judgment on the issue of attorney's fees. Sebena filed a cross-motion for summary judgment on his counterclaims. The District Court granted summary judgment to plaintiffs and denied Sebena's motion for summary judgment. After a hearing held May 15, 1990, the District Court awarded $5,237.87 in attorney's fees to plaintiffs. From the grant of summary judgment to plaintiffs, Sebena appeals.

## I

Did the District Court err by ruling in plaintiffs' favor on Sebena's summary judgment motion to recover under a bad faith counterclaim?

When no genuine issue exists as to any material fact, summary judgment may be granted as a matter of law. Rule 56(c), M.R.Civ.P.; *Blaskovich v. Noreast Development Corp.* (1990), 242 Mont. 326, 328, 790 P.2d 977, 978. The parties concede that the facts are undisputed and that the issues are matters of law.

Sebena alleges that plaintiffs breached the Contract of Sale by failing to provide the escrow agent with a title insurance policy and proof of release of the underlying mortgage which were conditions precedent to Sebena's payment on the Contract of Sale. Sebena further asserts that plaintiffs breached the implied covenant of good faith and fair dealing by initiating foreclosure proceedings when plaintiffs were in breach of the contract.

According to Sebena, if a contract for deed imposes an obligation

upon the seller to provide title insurance, other proof of merchantable title, or imposes other conditions, the buyer is relieved of all obligations under the contract if the seller does not meet the conditions. A distinction can be drawn between the cases upon which Sebena relies and this case. The cases Sebena cites concern sellers who were unable to convey merchantable title, excusing the buyer's breach. See, e.g., *Stark v. Borner* (1988), 234 Mont. 254, 762 P.2d 857 (seller of real estate cannot enforce forfeiture provision in a contract for deed if unable to convey good title).

In *Sjoberg v. Kravik* (1988), 233 Mont. 33, 759 P.2d 966, for example, the underlying mortgages were not released by the date specified in the contract. In *Sharbono v. Darden* (1986), 220 Mont. 320, 715 P.2d 433, the vendor had not obtained satisfaction of the underlying mortgage by the time the balloon payment was due. Here release of the underlying contract was obtained in 1977, several years before Sebena refused to release final payment.

In *Chadwick v. Giberson* (1980), 190 Mont. 88, 618 P.2d 1213, the seller was unable to convey an easement to the buyer as agreed upon. Defects in the title prevented the vendor from providing title insurance in *Yost Farm Co. v. Cremer* (1968), 152 Mont. 200, 447 P.2d 688. Similarly, in *Brown v. Griffin* (1968), 150 Mont. 498, 436 P.2d 695, the seller never furnished an abstract of title or title insurance.

In contrast, no doubt exists that plaintiffs were able to convey unencumbered, merchantable title. Plaintiffs notified Sebena in 1982 that they had provided title insurance. Sebena made installment payments from 1971 until January 1988 without objecting to the title insurance policy or release of the underlying mortgage and without exercising his remedies under the Contract of Sale, even though Sebena's 1981 letter to plaintiffs demonstrates that he was aware that plaintiffs had not provided these items at that time.

The Contract of Sale provides that the title insurance policy be placed in escrow "and held by the escrow agent and all documents be delivered to the Purchaser if the Purchaser performs all terms of this contract." This provision does not contradict the rule that unless the contract provides otherwise, "a seller under an installment sales contract does not have to produce marketable title until the date set for final payment and tender of the deed." *Scheitlin v. R. & D. Minerals* (1985), 217 Mont. 8, 11, 701 P.2d 1388, 1390. Under the facts of this case, Sebena cannot claim that plaintiffs breached the Contract of Sale.

On the other hand, Sebena did breach the contract. " 'If payment

[on a contract for deed] is to be made in installments, default in the payment of any installment is a distinct breach and gives the vendor the right to declare a forfeiture.' " *Hares v. Nelson* (1981), 195 Mont. 463, 467, 637 P.2d 19, 22 (quoting *Suburban Homes Co. v. North* (1914), 50 Mont. 108, 145 P. 2, 5).

■ Even if an express term of a contract is not breached, the implied covenant of good faith and fair dealing can be breached. *Story v. City of Bozeman* (1990), 242 Mont. 436, 450, 791 P.2d 767, 775. The covenant requires "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." Section 28-1-211, MCA; *Story,* 242 Mont. at 450, 791 P.2d at 775. The tort of bad faith requires a special relationship and breach of the same standard of "honesty" and "reasonable commercial standards of fair dealing." *Story,* 242 Mont. at 451, 791 P.2d at 776. Since the facts support the District Court's conclusion that plaintiffs had not acted dishonestly or unreasonably in fulfilling their obligations under the contract, we hold that the District Court did not err in granting summary judgment in plaintiffs' favor on Sebena's bad faith counterclaim.

## II

■ Did the District Court err by refusing to apply Rule 11, M.R.Civ.P., sanctions to plaintiffs?

The Rules of Civil Procedure allow sanctions to be imposed on two grounds: (1) if a pleading is frivolous, i.e., not "well grounded in fact" or "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;" or (2) if a pleading is "interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Rule 11, M.R.Civ.P.

District courts have "wide latitude to determine whether the factual circumstances of a particular case amount to frivolous or abusive litigation tactics ...." *D'Agostino v. Swanson* (1990), 240 Mont. 435, 446, 784 P.2d 919, 926.

In *D'Agostino,* we outlined the standard of review of Rule 11 sanctions: (1) the district court's findings of fact will not be overturned unless clearly erroneous; (2) the district court's conclusion that the facts constitute a violation of Rule 11 will not be reversed absent abuse of discretion; (3) review de novo is appropriate only if the violation is based upon the legal sufficiency of a plea or motion; (4) if Rule 11 has been violated, the district court must impose sanctions

on the offending party, his counsel, or both; and (5) failure to impose sanctions where the rule has been violated will be deemed reversible error. *D'Agostino,* 240 Mont. at 446, 784 P.2d at 926.

Sebena claims that plaintiffs caused unnecessary delay and needless increase in the cost of litigation by filing the foreclosure action and failing to dismiss the action after the foreclosure issue became moot, forcing Sebena to file a pro se answer to avoid default. Sebena contends that plaintiffs then filed motions to dismiss or for a more definite statement, requiring Sebena to retain an attorney to file an amended answer and counterclaims. Finally, Sebena argues that he "was forced to respond to discovery, attend mediation proceedings, and to incur substantial attorney fees defending against the foreclosure" because plaintiffs did not amend their complaint until September 26, 1989.

The filing of the foreclosure action was justified by Sebena's failure to release final payment from escrow despite plaintiffs' compliance with the contract. Once the action was begun, plaintiffs did not "harass" Sebena by filing motions to dismiss or for a more definite statement. No one forced Sebena to file counterclaims. When the action was filed, the cause of action was well grounded in fact and warranted by existing law. We hold that the District Court's finding that plaintiffs "acted reasonably and in good faith" is not clearly erroneous. The District Court did not err by rejecting Sebena's request for Rule 11, M.R.Civ.P., sanctions.

### III

Did the District Court err by granting summary judgment to plaintiffs on the issue of attorney's fees?

The Contract of Sale provided that in the event of litigation under the contract, the successful party was entitled to reasonable attorney's fees. Sebena contends that since the foreclosure action was "premature," plaintiffs could not be the "successful party." Sebena also argues that he was the prevailing party because plaintiffs dismissed their foreclosure action.

In cases " 'where both parties gain a victory but also suffer a loss,' " neither party prevails. *Lauderdale v. Grauman* (1986), 223 Mont. 357, 359, 725 P.2d 1199, 1200 (quoting *Parcel v. Myers* (1984), 214 Mont. 220, 224, 697 P.2d 89, 91- 92). However, dismissal of a claim does not necessarily mean that the party has suffered a loss. In *Lauderdale,* plaintiffs sued for breach of a contract for deed.

Defendants counterclaimed and dismissed their counterclaim after plaintiffs paid in full. The jury found against the plaintiffs on their claims. We stated that dismissal of defendants' counterclaim was "clearly distinguishable from a situation where the jury found against [defendants] on the counterclaim." *Lauderdale,* 223 Mont. at 359, 725 P.2d at 1200.

This case is analogous to *Lauderdale.* Plaintiffs' claim became moot, but the District Court ruled against Sebena on his counterclaims. Thus, plaintiffs are the prevailing parties. Since plaintiffs were the successful parties, we hold that the District Court did not err in granting plaintiffs summary judgment and awarding plaintiffs attorney's fees pursuant to the Contract of Sale.

In addition, plaintiffs request attorney's fees and costs of this appeal. "An award of attorney's fees is proper on appeal where the fees are based on a contract." *Poulson's, Inc. v. Wood* (1988), 232 Mont. 411, 417, 756 P.2d 1162, 1166. Plaintiffs should receive reasonable attorney's fees and costs. This case is affirmed and remanded to the District Court for determination of attorney's fees and costs on appeal.

Affirmed.

CHIEF JUSTICE TURNAGE and JUSTICES TRIEWEILER, WEBER and McDONOUGH concur.