No. 96-357

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

JOSEPH C. ENGEL,

    Plaintiff, Counterclaim Defendant,
    Respondent, and Cross-Appellant,

v.

DARLENE WAGNER, a/k/a DARLENE FRANSSON,

    Defendant, Counterclaimant,
    and Appellant.

FILED

MAR 25 1997

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Anne Biby and Sean Hinchey;
        Bottomly Law Offices; Kalispell, Montana

    For Respondent:

        James C. Bartlett; Hash, O'Brien
        & Bartlett; Kalispell, Montana

Submitted on Briefs: January 16, 1997

Decided: March 25, 1997

Filed:

Justice Terry N. Trieweiler delivered the opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Joseph C. Engel filed a complaint for a declaratory judgment in the District Court for the Eleventh Judicial District in Flathead County. He asked the District Court to decide that he was not Darlene Wagner's attorney, and that Wagner was not entitled to any of the settlement proceeds he obtained during a prior lawsuit against Glacier Log Homes. Wagner counterclaimed and alleged breach of contract, breach of fiduciary duties, malpractice, and misrepresentation. Prior to trial, the District Court granted several of the parties' cross-motions for partial summary judgment. For Engel, the District Court ruled that, as a matter of law, there was no attorney-client relationship. Accordingly, it dismissed Wagner's malpractice and misrepresentation counterclaims. For Wagner, the District Court ruled that Engel had breached a contract and his fiduciary duties. After a non-jury trial, the District Court awarded Wagner damages for Engel's breach of contract. Wagner appeals and Engel cross-appeals the judgment of the District Court. We affirm in part, reverse in part, and remand to the District Court for further proceedings consistent with this opinion.

On appeal, Wagner raises the following issues:

2

1. Did the District Court err when it granted summary judgment to Engel regarding the attorney-client relationship issue?

2. Did the District Court err when it declined to award Wagner damages for Engel's breach of fiduciary duties?

3. Did the District Court err when it held that Engel is entitled to attorney fees and costs from Wagner's share of the recovery from Glacier Log Homes?

4. Did the District Court err when it held that the sanctions awarded for discovery abuses in a prior lawsuit against Glacier Log Homes belong entirely to Engel, the attorney?

5. Did the District Court err when it excluded evidence of tape-recorded conversations between the parties?

On cross-appeal, Engel raises the following issues:

1. Did the District Court err when it held that Engel breached a contract?

2. Did the District Court err when it awarded Wagner prejudgment interest?

3. Did the District Court err when it declined to hold that Wagner's claim is void because against public policy on the grounds of champerty and maintenance?

FACTUAL BACKGROUND

Darlene Wagner and William Shrewsbury were engaged in various joint business enterprises in the Flathead Valley for a period of time in the 1980s. One of their joint ventures involved the promotion and sale of log homes manufactured by Glacier Log Homes, Inc. Shrewsbury and Buck Foster, the owner of Glacier Log Homes, agreed that Shrewsbury would receive a ten percent commission for

3

the log homes which were sold through his efforts. As a result of Wagner's contributions, Shrewsbury assigned to her, in writing, the rights to one-half of the commissions.

A dispute arose between Glacier Log Homes and Shrewsbury with regard to the commissions. After they unsuccessfully attempted to collect the commissions owed to them, Wagner and Shrewsbury had a falling out.

Shrewsbury initiated a lawsuit against Glacier Log Homes. When Wagner learned of the lawsuit, she contacted Shrewsbury. At that time, Shrewsbury asked Wagner to locate a new attorney, because his original attorney had health problems.

In January, 1990, Wagner contacted attorney Joseph Engel. She met with him and provided him with information about the case. Ultimately, Engel contacted Shrewsbury and they entered into a contingency fee retainer agreement. Wagner was not a signatory to the contingency fee retainer agreement and was not formally made a party to the lawsuit. Engel advised her that she did not have standing to be a party to the lawsuit, but that her rights were adequately protected by the assignment from Shrewsbury.

On July 2, 1991, Shrewsbury, Engel, and Wagner entered into an agreement which provides that the proceeds of the underlying lawsuit against Glacier Log Homes are to be split equally between Shrewsbury and Wagner, after Engel takes out his attorney fees (a one-third contingency fee) and costs. The contract expressly states, in relevant part, as follows:

> After attorney fees, documented attorney expenses incurred (such as travel expenses, deposition costs and witness fees), documented necessary expenses for William

4

Shrewsbury and Darlene Wagner, the balance of the recovery in whatever form shall be split in half. At the time Mr. Engel receives his fees and expenses, he shall have authority to pay Darlene Wagner directly her portion (50%) and William Shrewsbury his portion (50%). Darlene Wagner will be paid directly by Joseph Engel from the recovery without the recovery first going to William Shrewsbury for distribution.

The contract also specifies that Wagner is to receive an additional $1,500, from Shrewsbury's share, in order to repay her for a preexisting debt.

Prior to trial, Engel successfully recovered sanctions from Glacier Log Homes in the amount of $8,700 for discovery abuses. Trial was scheduled to commence on May 4, 1992. However, shortly before that date, Shrewsbury refused to travel to Montana to testify. Therefore, on May 1, 1992, Engel settled the case. The settlement package included: (1) $1,300 in cash; and (2) a log home valued at $27,247. Glacier Homes also paid to Engel the amount previously awarded for sanctions.

After the settlement, Engel received an assignment from Shrewsbury of all of Shrewsbury's interest in the case. In return, Engel paid Shrewsbury $5,000. Wagner did not receive any of the proceeds.

Wagner subsequently learned of the settlement and demanded her share of the proceeds. However, Wagner and Engel were unable to negotiate a resolution. As a result, Engel filed a complaint for a declaratory judgment in which he asked the District Court to decide that Wagner was not his client and that she was not entitled to any of the settlement proceeds. Wagner counterclaimed and

5

alleged breach of contract, breach of fiduciary duties, malpractice, and misrepresentation.

Both parties filed cross-motions for partial summary judgment. The District Court held that as a matter of law there was no attorney-client relationship. On that basis, the District Court also dismissed Wagner's malpractice and misrepresentation counterclaims. Furthermore, the District Court granted summary judgment on Wagner's behalf with regard to her breach of contract and breach of fiduciary duties counterclaims.

After a nonjury trial, the District Court awarded Wagner damages for Engel's breach of contract, but no damages for his breach of fiduciary duties. When the District Court calculated Wagner's damages, it determined that the "recovery in whatever form obtained by [Engel] as Shrewsbury's attorney in the Glacier Log Home case is the sum of $28,547.00 [the log home valued at $27,247 plus the $1,300 cash payment]." The District Court specifically found that because the $8,700 sanctions award had been designated as attorney fees, it should not be included in the settlement amount.

As a result, the District Court made the following findings:

12. That pursuant to [Engel's] contingent fee agreement with Shrewsbury, [Engel] is entitled to one-third of the amount of Shrewsbury's recovery [$28,547.00] which is the sum of $9,515.00 and costs advanced in the sum of $1,000.00.

13. That pursuant to the July 2, 1991 agreement between [Engel], [Wagner] and Shrewsbury, [Engel] is entitled to first deduct his attorney fee and costs owed by Shrewsbury in the total amount of $10,515.00 from the total recovery of $28,547.00 for Shrewsbury from Glacier Log Homes, resulting in net proceeds of $18,032.00 to be divided and paid according to the July 2, 1991 agreement.

6

14. That [Wagner] is entitled to 50% of said sum, or $9,016.00, plus the sum of $1,500.00 as provided in said agreement, for a total of $10,516.00 which should have been paid by [Engel] to [Wagner] within a reasonable time after the settlement of the Glacier Log Homes lawsuit May 1, 1992.

Wagner appeals and Engel cross-appeals the judgment of the District Court.

## STANDARDS OF REVIEW

Rulings on summary judgment are governed by Rule 56(c), M.R.Civ.P., which provides, in relevant part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The purpose of summary judgment is to encourage judicial economy through the elimination of any unnecessary trial; however, summary judgment is not a substitute for trial if a genuine factual controversy exists. *Reaves v. Reinbold* (1980), 189 Mont. 284, 288, 615 P.2d 896, 898.

It is well established that the moving party must prove that it is entitled to a judgment as a matter of law. To do this, it is required to show a complete absence of any genuine factual issues. *D'Agostino v. Swanson* (1990), 240 Mont. 435, 442, 784 P.2d 919, 924. To defeat the motion, the nonmoving party must set forth facts which demonstrate that a genuine factual issue exists. *O'Bagy v. First Interstate Bank of Missoula* (1990), 241 Mont. 44, 46, 785 P.2d 190, 191. All reasonable inferences that may be drawn from the offered proof must be resolved in favor of the nonmoving

7

party.  *D'Agostino*, 240 Mont. at 442, 784 P.2d at 924. Additionally, if there is any doubt regarding the propriety of the summary judgment motion, it should be denied.  *Whitehawk v. Clark* (1989), 238 Mont. 14, 18, 776 P.2d 484, 486-87.

Additionally, this appeal involves issues which were not resolved by summary judgment rulings.  Therefore, it is necessary to delineate the other applicable standards of review.  When we review a district court's conclusions of law, the standard of review is whether those conclusions are correct.  *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.  When we review a district court's findings of fact, the standard of review is whether those findings are clearly erroneous. *Daines v. Knight* (1995), 269 Mont. 320, 324, 888 P.2d 904, 906.

## ISSUE 1

Did the District Court err when it granted summary judgment to Engel regarding the attorney-client relationship issue?

The District Court ruled that, as a matter of law, "[Engel] was never the attorney for [Wagner] at any point in time."  On that basis, the District Court granted Engel's motion for summary judgment pertaining to the attorney-client relationship issue.

Wagner, however, contends on appeal that there are genuine issues of material fact and that, therefore, the District Court erred when it granted Engel's motion for summary judgment.  Wagner first asserts, as a general proposition, that whether an attorney-client relationship exists is a question of fact to be decided on a case-by-case basis.  She then delineates the following six

8

factors which she maintains should be considered when making a determination as to whether an attorney-client relationship exists: (1) the consulting party's intent to seek legal advice or services; (2) the fact that the attorney actually gives legal advice; (3) the existence of a contract between the parties; (4) payment by the party to the attorney; (5) the receipt or disbursal of confidential information to or from the person who asserts the existence of the relationship; and (6) the consulting party's reasonable belief that she was represented by the attorney.

We agree with Wagner's assertions. Whether an attorney-client relationship exists in a particular case will necessarily depend on the facts and circumstances of that case. Furthermore, while Wagner's six-factor test is not exhaustive, we conclude that it provides effective guidance in this case.

After a review of the record, we conclude that there are genuine issues of material fact with regard to each of the aforementioned six factors. Accordingly, we hold that the District Court erred when it granted summary judgment on Engel's behalf with regard to the attorney-client relationship issue.

Furthermore, we conclude that as a result of our holding the District Court's dismissal of Wagner's malpractice, misrepresentation, and punitive damages counterclaims must also be reversed.

## ISSUE 2

Did the District Court err when it declined to award Wagner damages for Engel's breach of fiduciary duties?

9

Prior to trial, the District Court granted summary judgment on Wagner's behalf with regard to her breach of contract and breach of fiduciary duties counterclaims. After a non-jury trial, however, the District Court awarded her damages for Engel's breach of contract, but dismissed her breach of fiduciary duties counterclaim.

On appeal, Wagner contends that the District Court erred when it dismissed her counterclaim and failed to award her damages for Engel's breach of fiduciary duties. Specifically, she asserts that the District Court arbitrarily and improperly reversed its prior summary judgment ruling.

The District Court's summary judgment ruling established that as a matter of law Engel owed Wagner fiduciary duties and that he had, in fact, breached those duties. The ruling, however, did not relieve Wagner of her obligation to prove that, as a result of the breach, she had suffered any legally compensable damages. It is well established that the "law does not require that for every injury there must be a recovery of damages, but only imposes liability for a breach of legal duty by defendant proximately causing injury to plaintiff." *Negaard v. Feda* (1968), 152 Mont. 47, 52, 446 P.2d 436, 439-40.

At trial, Wagner had the opportunity to submit evidence and to prove her damages. At the close of all the evidence, however, the District Court concluded that she was entitled to damages for Engel's breach of contract, but that she did not suffer any legally compensable harm as the result of Engel's breach of fiduciary

10

duties. It was, therefore, proper for the District Court to dismiss Wagner's breach of fiduciary duties counterclaim.

Accordingly, we hold that the District Court did not err when it declined to award Wagner damages for Engel's breach of fiduciary duties and instead dismissed her counterclaim.

ISSUE 3

Did the District Court err when it held that Engel is entitled to attorney fees and costs from Wagner's share of the recovery from Glacier Log Homes?

When the District Court calculated and awarded Wagner's damages, it held that:

> [Engel] is entitled to first deduct his attorney fee and costs owed by Shrewsbury in the total amount of $10,515.00 from the total recovery of $28,547.00 for Shrewsbury from Glacier Log Homes, resulting in net proceeds of $18,032.00 to be divided and paid according to the July 2, 1991 agreement.

On appeal, Wagner contends that the District Court erred when it held that Engel is entitled to attorney fees and costs from her share of the recovery. Specifically, she asserts that when the District Court allowed Engel to "first deduct his attorney fee and costs," it expressly contradicted its prior summary judgment ruling that Engel was not Wagner's attorney.

At the outset, we recognize that Wagner's argument could be rendered moot if on remand it is established that there was, in fact, an attorney-client relationship. However, even if it is subsequently determined that there was not an attorney-client relationship, we conclude that Engel is still entitled to "first deduct his attorney fee and costs." The parties' July 2, 1991,

11

contract expressly states, in relevant part, as follows: "After attorney fees, documented attorney expenses incurred . . . the balance of the recovery in whatever form shall be split in half." (Emphasis added.) Therefore, pursuant to the parties' contract, Wagner's share of the recovery is to be calculated after Engel's fees are first deducted.

Accordingly, we hold that the District Court did not err when it determined that Engel is entitled to attorney fees and costs from Wagner's share of the recovery from Glacier Log Homes.

ISSUE 4

Did the District Court err when it held that the sanctions awarded for discovery abuses in a prior lawsuit against Glacier Log Homes belong entirely to Engel, the attorney?

When the District Court calculated Wagner's damages, it held that the "recovery in whatever form obtained by [Engel] as Shrewsbury's attorney in the Glacier Log Home case is the sum of $28,547.00 [the log home valued at $27,247 plus the $1,300 cash payment]." The District Court specifically concluded that because the $8,700 sanctions award against Glacier Log Homes had been designated as attorney fees, it should not be included in the amount of "recovery."

On appeal, Wagner contends that the District Court erred when it determined that the sanctions should not be included in the amount of "recovery." Specifically, she asserts that the $8,700 award is a part of the "recovery in whatever form" and that, therefore, it should be distributed accordingly.

12

We recognize that, when the District Court awarded sanctions against Glacier Log Homes in the underlying lawsuit, it did, in fact, designate them as "attorney fees." However, we conclude that that fact is not dispositive of this issue and that, despite that designation, the sanctions award does not belong entirely to the attorney.

We agree with the reasoning of the D. C. Circuit Court in *Hamilton v. Ford Motor Co.* (D. C. Cir. 1980), 636 F.2d 745. In that case, the court initially recognized that "[i]t is elementary that an attorney may not seek compensation from the client in addition to that provided in the contract between the attorney and the client . . . . [A]ll compensation . . . [is] to be covered by the terms of the contract." *Hamilton*, 636 F.2d at 748 (citing *In re Laughlin* (D. C. Cir. 1959), 265 F.2d 377; *Carmichael v. Iowa State Highway Comm'n* (Iowa 1974), 219 N.W. 2d 658). Ultimately, the court held:

> [A]bsent a provision in the [attorney-client] contract allocating Rule 37(b) [discovery abuse sanctions] awards of attorney's fees, the plain terms of the Retainer Agreement in this case provide that the one-third contingency fee is the sole source of compensation for the attorneys.

*Hamilton*, 636 F.2d at 748.

With regard to the underlying lawsuit against Glacier Log Homes, Shrewsbury and Engel entered into a retainer agreement. With regard to Engel's compensation, their agreement stated as follows:

> One-third (33%) of the amount recovered if the case is settled without the necessity of trial;

13

Forty percent (40%) of the amount recovered upon trial of this case;

Fifty percent (50%) of the amount recovered after a successful trial verdict and the case is appealed and upheld on appeal.

Their agreement limits compensation to the attorney to a percentage of any amount recovered. It does not provide an exception for amounts recovered as sanctions and designated by the court as attorney fees. Therefore, pursuant to the principles delineated in *Hamilton*, we conclude that Engel's compensation is limited by the terms of the retainer agreement and, based on the facts of this case, Shrewsbury (the client), and not Engel (the attorney), is the proper recipient of the $8,700 sanctions award after deduction of the appropriate costs and fees.

It necessarily follows that the $8,700 sanctions award paid by Glacier Homes is a part of Shrewsbury's recovery and therefore, a part of the settlement package entered into between Engel--on Shrewsbury's behalf--and Glacier Log Homes. Furthermore, the July 2, 1991, contract entered into by Wagner, Shrewsbury, and Engel expressly requires "the dispersement of recovery, whether from suit, settlement or other compensation." Concomitantly, when the District Court enforces the terms of the July 2, 1991, contract and calculates the amount to which Wagner is entitled, it is required to include the $8,700 sanctions award as part of the "balance of the recovery in whatever form."

Accordingly, we hold that the District Court erred when it excluded the sanctions award from the settlement amount which is to be distributed pursuant to the terms of the parties' July 2, 1991, contract.

14

ISSUE 5

Did the District Court err when it excluded evidence of tape-recorded conversations between the parties?

When we review a district court's evidentiary ruling, the standard of review is whether the district court abused its discretion. *Hislop v. Cady* (1993), 261 Mont. 243, 247, 862 P.2d 388, 390. The test for abuse of discretion is "whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Tanner v. Dream Island, Inc.* (1996), 275 Mont. 414, 430, 913 P.2d 641, 651. Additionally, we note that questions relating to the admissibility of evidence are "left to the sound discretion of the trial court, subject to review only in the case of manifest abuse." *Mason v. Ditzel* (1992), 255 Mont. 364, 370-71, 842 P.2d 707, 712.

Prior to trial, Wagner recorded several telephone conversations between Engel and herself on her answering machine. She recorded the conversations without Engel's knowledge or consent. The tapes were transcribed and copies were provided to Engel during discovery.

At trial, the District Court allowed Wagner to read into the record a quote taken directly from the tapes "for the purpose of showing that [Engel] has not told the truth." After counsel for Wagner read the quote, counsel for Engel moved to strike the quoted material and stated the following grounds for his objection:

15

"Objection. Move to Strike. That's not impeachment. That's exactly what he said." The District Court granted Engel's motion.

On appeal, Wagner contends that the District Court erred when it granted Engel's motion to strike. Specifically, she asserts that the evidence is admissible for impeachment purposes even if it was illegally obtained. In support of her position, she cites several federal court decisions which, in the criminal law context, uphold the admission of illegally obtained evidence for impeachment purposes. On that basis, she requests that we issue a ruling, at this time, "that the transcriptions of the taped conversations may be used for impeachment or other purposes."

Engel, on the other hand, maintains that § 1-3-208, MCA, and the Right of Privacy contained in Montana's Constitution preclude the admission of illegally obtained evidence.

After a review of the record, however, we conclude that the District Court's decision to exclude the evidence was not based on such public policy arguments. Rather, the District Court merely agreed with counsel for Engel that Wagner's proffered evidence was not, in fact, offered for impeachment purposes, and did not, in fact, constitute valid impeachment evidence.

Accordingly, we hold that the District Court did not abuse its discretion when it granted Engel's motion to strike and excluded evidence of the tape-recorded telephone conversations.

CROSS-APPEAL ISSUE 1

Did the District Court err when it held that Engel breached a contract?

16

Engel, Shrewsbury, and Wagner entered into a contract on July 2, 1991, which described with particularity the manner in which Engel was to distribute the proceeds of the underlying lawsuit against Glacier Log Homes. Prior to trial, the District Court determined that as a matter of law Engel breached that contract when he failed to compensate Wagner in accordance with its terms. After trial, the District Court awarded Wagner damages for Engel's breach of contract.

On cross-appeal, Engel contends that the District Court erred when it determined that he breached the July 2, 1991, contract. In essence, he asserts that he filed his complaint for a declaratory judgment in order to have the District Court determine the respective rights of the parties, and that until those rights were fully determined there could not be a breach of contract.

The District Court found that the July 2, 1991, contract between Engel, Shrewsbury, and Wagner was valid and legally binding. It further found that, pursuant to the unambiguous terms of the contract, Wagner is entitled to fifty percent of the net "recovery in whatever form" against Glacier Log Homes. Furthermore, it is undisputed that Engel settled the case against Glacier Log Homes on May 1, 1992; and, as we previously held, that settlement included a $10,000 cash payment and a log home valued at approximately $27,000.

The respective rights of the parties have now been established and the District Court correctly concluded that, pursuant to their contract, Engel is obligated to disperse to Wagner the money to which she is entitled. Therefore, whether Engel breached the

17

contract is, at this point in time, irrelevant; either way, Wagner is entitled, pursuant to the contract, to receive her fifty percent share of the net recovery against Glacier Log Homes.

Although, as previously stated, the District Court erred when it calculated the amount of the "recovery in whatever form" and, concomitantly, the amount of Wagner's damages, we hold that the District Court did not err when it determined that Engel breached his contract and that Wagner is entitled to damages. Accordingly, the judgment of the District Court is affirmed.

### CROSS-APPEAL ISSUE 2

Did the District Court err when it awarded Wagner prejudgment interest?

When the District Court awarded Wagner breach of contract damages, it also awarded her prejudgment interest at the rate of ten percent per annum from May 1, 1992--the date on which Engel settled the case against Glacier Log Homes.

On cross-appeal, Engel contends that the District Court erred when it awarded Wagner prejudgment interest from May 1, 1992. He asserts that, if interest is to be awarded at all, it should only be awarded from February 21, 1996--the date on which the District Court entered its order.

In Montana, the right to prejudgment interest is governed by § 27-1-211, MCA, which provides as follows:

> Right to Interest. Every person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover which is vested in him upon a particular day is entitled also to recover interest thereon from that day except during such time as the debtor is prevented by law or by the act of the creditor from paying the debt.

18

We have already concluded that Engel's failure to comply with the terms of the parties' July 2, 1991, agreement constituted a breach of contract and therefore, that Wagner is entitled to damages for that breach. Furthermore, it is undisputed that Engel settled the underlying lawsuit against Glacier Log Homes on May 1, 1992, and therefore, that the breach occurred on that date. Furthermore, Wagner was entitled to her share of the settlement proceeds at that time, which was in sum capable of being made certain. Accordingly, we hold that the District Court did not err when it awarded Wagner prejudgment interest from May 1, 1992.

CROSS-APPEAL ISSUE 3

Did the District Court err when it declined to hold that Wagner's claim is void because against public policy on the grounds of champerty and maintenance?

The District Court neither addressed nor analyzed the champerty or maintenance issues. However, on cross-appeal, Engel contends that Wagner's entire claim should fail because it is void as against public policy for champerty and maintenance. Specifically, he alleges that Wagner, who was not a party to the underlying lawsuit against Glacier Log Homes: (1) contributed money to support the lawsuit; (2) is being compensated for her role as a witness; and (3) is a stranger to the lawsuit.

The definition of maintenance is as follows:

> [M]aintenance involves the act of improperly, for the purpose of stirring up litigation and strife, encouraging others either to bring actions or to make defenses that they have no right to make. In any event, maintenance is an officious intermeddling in a suit which in no way belongs to the intermeddler by maintaining or assisting either party to the action, with money or otherwise, to

19

prosecute or defend it. In other words it is the intermeddling in a suit by a stranger, one having no privity or concern in the subject matter and standing in no relation of duty to the suitor.

14 Am. Jur. 2d *Champerty and Maintenance* § 2 (1964).

The definition of champerty is as follows:

Champerty is a species of maintenance. It is . . . a bargain by a champertor with a plaintiff or defendant for a portion of the matter involved in a suit in case of a successful termination of the action, which the champertor undertakes to maintain or carry on at his own expense.

14 Am. Jur 2d *Champerty and Maintenance* § 3 (1964).

In *Schnabel v. Taft Broadcasting Co., Inc.* (Mo. App. 1975), 525 S.W. 2d 819, 825, the Missouri Court of Appeals concluded that the doctrine of champerty "has been narrowed, tempered and mellowed in modern times." The court went on to hold that "[t]he doctrine as now practiced takes out of the rule those who interfere in litigation in which they have, or honestly believe they have, an interest." *Schnabel*, 525 S.W.2d at 825.

We agree with the *Schnabel* Court and find its reasoning to be persuasive. After a review of the record, we conclude that Wagner had, or at least honestly believed that she had, an interest in this litigation. For example, prior to the litigation Shrewsbury assigned to Wagner the rights to one-half of the commissions from Glacier Log Homes; and the right to those commissions formed the basis of Shrewsbury's underlying lawsuit against Glacier Log Homes. Furthermore, Wagner testified that she believed Engel was her attorney and that the lawsuit was protecting her interests. Accordingly, we hold that the District Court did not err when it

20

failed to declare Wagner's claim void for champerty and maintenance.

The judgment of the District Court is hereby reversed in part and affirmed in part, and the case is remanded for further proceedings consistent with this opinion.

_____
                                                    Justice

We Concur:

_____

_____

_____

_____
                    Justices

March 25, 1997

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Sean Hinchey, Esq.
Bottomly Law Offices
P.O. Box 1976
Kalispell, MT  59903-1976

James C. Bartlett, Esq.
Hash, O'Brien & Bartlett
P.O. Box 1178
Kalispell, MT  59903-1178

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy