No. 99-379

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 19N

MICHAEL L. MILLER,

Petitioner and Appellant,

v.

STATE COMPENSATION INSURANCE FUND,

Respondent and Insurer for

JACK GALT,

Employer.

APPEAL FROM: Workers Compensation Court, State of Montana

The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Michael L. Miller, *Pro Se*, St. Ignatius, Montana

For Respondent:

Thomas E. Martello, State Compensation Insurance Fund,

Helena, Montana

Submitted on Briefs: October 28, 1999

Decided: January 27, 2000

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1.Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2.Michael L. Miller (Miller) appeals from the findings of fact, conclusions of law and order entered by the Workers' Compensation Court dismissing his petition to reopen a 1988 Full and Final Compromise Settlement. We affirm.

¶3.The dispositive issue on appeal is whether the Workers' Compensation Court erred in concluding that Miller's petition to reopen the Full and Final Compromise Settlement is barred by the statute of limitations contained in § 27-2-203, MCA.

*BACKGROUND*

¶4.On October 23, 1983, Miller suffered a serious head injury while in the course and scope of his employment by the Galt Ranch. The Galt Ranch was insured by the State Compensation Insurance Fund (State Fund), which accepted liability and paid compensation and medical benefits. As a result of this injury, Miller was permanently totally disabled.

¶4.In October of 1987, Dr. Dean Ross assigned Miller an impairment rating of 75% based on significant ataxia affecting his dynamic balance. Dr. Ross also recommended that Miller never attempt to walk with loads over 50 pounds and only occasionally with

weights between 11 and 50 pounds.

¶5.Miller entered into a Full and Final Compromise Settlement (Compromise Settlement) of total disability benefits with the State Fund on September 20, 1988. The Compromise Settlement provided for a lump sum payment of $132,145.10, and was approved by the Department of Labor and Industry. The rationale underlying the Compromise Settlement was to allow Miller to be self-employed by purchasing and operating an 80-acre ranch.

¶6.The following summer, Miller experienced back problems and purportedly was unable to perform physical work on his ranch. He saw Dr. J. E. Lewis, an osteopath, on October 30, 1989, complaining of low-back pain since the 1983 accident. He reported that the pain, which initially had been tolerable, was becoming increasingly worse. He also informed Dr. Lewis that he had seen a chiropractor at various times to relieve the pain, but the chiropractic treatment was providing less relief. Dr. Lewis opined that Miller had some neurological deficit secondary to the 1983 injury which was related to the low-back pain and recommended a neurological consult or an orthopedic referral. Since he could not physically work the ranch, Miller leased the ranch out for three years, from 1989 to 1991, and his brother ran it the following year. In 1993, Miller tried again to run the ranch and perform the required physical work. According to Miller, he was unable to do so.

¶7.Dr. William Ferril examined Miller on August 27, 1994, for complaints of continued low-back pain. Dr. Ferril opined that severe balance difficulties secondary to the head injury prevented Miller from lifting heavy objects and, therefore, the low-back pain was most probably related to the earlier head injury. Dr. Ferril informed the State Fund of his diagnosis and requested it to advise Miller on his coverage status. The State Fund denied liability and medical benefits.

¶8.Miller saw Dr. Ross again on May 3, 1995, in an effort to discover whether his low-back pain was associated with the earlier head injury. Dr. Ross diagnosed Miller with lumbar facet syndrome--that is, chronic low-back pain. Although Dr. Ross could not categorically attribute the onset of Miller's back pain to the 1983 accident, he was reasonably certain that the accident increased Miller's risk for low-back pain.

¶9.On June 30, 1995, Miller's attorney wrote to the State Fund urging its consideration of the recurring back problem Miller had experienced since the 1983 accident. In this letter, the attorney related that

Apparently [Miller] has made contact with your office and you requested substantiating information. [Miller] has had a comprehensive medical examination relating specifically to his back problem and we would like to have this information reviewed, with a view towards your reconsidering your initial decision.

Your most recent correspondence has been misplaced and I would ask that you provide me with the proper information so we might arrange for mediation or hearing as appropriate.

¶10.The State Fund initially responded by seeking a medical desk review consisting of a review of the record by the State Fund's Medical Peer Review Panel to determine if the medical records on file supported its denial of liability. After the panel concurred in the denial of liability, the State Fund sought an independent medical examination of Miller. In 1996, the State Fund accepted liability for Miller's back condition and paid medical benefits for treatment. The State Fund and Miller also entered into a settlement agreement for past medical bills related to the back condition.

¶11.On August 3, 1998, Miller petitioned the Workers' Compensation Court to reopen the 1988 Full and Final Compromise Settlement based on mutual mistake of fact. He alleged that, at the time of entering the settlement, he and the State Fund believed he could operate a small ranch and that he was unable to do so because of the low-back pain related to his earlier head injury. At the pretrial conference, the State Fund contended that the statute of limitations had run for reopening the Compromise Settlement based on mutual mistake of fact. The Workers' Compensation Court subsequently dismissed Miller's petition with prejudice, concluding it was barred by the statute of limitations. Miller requested a rehearing and the court denied the request. Miller appeals.

## STANDARD OF REVIEW

¶12.We review the Workers' Compensation Court's conclusions of law to determine if the interpretation of the law is correct. *Rath v. St. Labre Indian School* (1991), 249 Mont. 433, 439, 816 P.2d 1061, 1064 (citation omitted).

## DISCUSSION

¶13.**Did the Workers' Compensation Court err in concluding that Miller's petition to reopen the Compromise Settlement is barred by the statute of limitations contained in § 27-2-203, MCA?**

¶14.The Compromise Settlement entered into by Miller and the State Fund is a contract to which we apply principles of contract law. *See South v. Transportation Ins. Co.* (1996), 275 Mont. 397, 401, 913 P.2d 233, 235. An apparent consent to a contract is not real or free if obtained through mistake. Section 28-2-401(1)(e), MCA. A mistake of fact, as alleged by Miller's petition as the basis to reopen the Compromise Settlement, is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in . . . belief in the present existence of a thing material to the contract which does not exist or in the past existence of such a thing which has not existed.

*See § 28-2-409(2), MCA. We have held in the workers' compensation context that a full and final compromise settlement "must be set aside for mutual mistake of a material fact as to the nature and the extent of the injury caused by claimant's accident." Kienas v. Peterson (1980), 191 Mont. 325, 330, 624 P.2d 1, 3.*

¶15.Miller's petition alleged that, at the time he and the State Fund entered into the Compromise Settlement, they both believed he had the ability to operate a small ranch. Miller further alleged that he became unable to physically work on the ranch due to low-back pain related to his head injury and, thus, the Compromise Settlement was premised on a mutual mistake of fact regarding the extent of his injuries. Without regard to whether Miller could have proven the existence of a mutual mistake of fact, the allegations in his petition stated a cognizable legal basis for reopening the Compromise Settlement.

¶16.Additional legal principles apply, however. A contract-based action for relief grounded on mistake must be commenced within two years, but "the cause of action in such case [is] not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the . . . mistake." Section 27-2-203, MCA. The two-year statute of limitations does not begin to run when the party bringing the action actually discovers the mistake, however; it begins to run when the facts are such that the mistake would have been discovered if the party bringing the action had exercised ordinary diligence. *See Rath*, 249 Mont. at 439-40, 816 P.2d 1065 (citation omitted).

¶17.The Workers' Compensation Court found--and Miller does not dispute--that Miller knew his back condition was related to his head injury at least as early as June 30, 1995. On the basis of that finding, the Workers' Compensation Court concluded that, "[s]ince the petition was not brought within two years of when the claimant became aware of the alleged mistake, it is barred."

¶18.Miller argues that, because the State Fund did not accept liability for his back

problems until 1996, the statute of limitations did not begin to run on June 30, 1995. We disagree.

¶19.While not at all clear, Miller's argument seems to be that the State Fund's acceptance of liability in 1996 was an implicit agreement that the extent of Miller's injuries was greater than believed at the time of the Compromise Settlement and, therefore, that a mutual mistake of fact existed in 1988. Even assuming *arguendo* that the acceptance of liability was a concession of mutual mistake of fact, however, Miller advances no authority under which the statute of limitations question revolves around when the second party to a settlement agreement recognized or conceded that a mutual mistake of fact had existed at the time of the agreement. Section 27-2-302, MCA, is clear that the two-year statute of limitations runs from discovery by "the aggrieved party" of the facts constituting the mistake. Similarly, our case law holds that the statute of limitations begins to run when the facts are such that "the party bringing the action" would have discovered the mistake if ordinary diligence had been exercised. *See Rath*, 249 Mont. at 440, 816 P.2d at 1065 (citation omitted). Thus, the 1996 date on which the State Fund accepted liability for Miller's low-back condition is irrelevant to the statute of limitations issue.

¶20.Here, the record reflects that Miller knew of his low-back pain as early as 1989 and obtained three medical opinions between 1989 and May of 1995 relating the low-back pain to his earlier head injury. Moreover, it is undisputed that Miller and his attorney were aware of the relationship between Miller's back condition and his earlier injury at least as early as June 30, 1995, when they indicated their readiness to litigate the issue if the State Fund did not accept liability for the low-back condition.

¶21.Miller also contends he did not know he had the legal right to petition to reopen the Compromise Settlement until the State Fund mentioned the possibility in July of 1998. However, a statute of limitations is not tolled until a party discovers the legal right to petition for relief. *Wisher v. Higgs* (1993), 257 Mont. 132, 140, 849 P.2d 152, 157 (citation omitted). Thus, Miller's failure to discover his legal right does not toll the statute of limitations.

¶22.Miller also quotes from *South*, 275 Mont. at 403, 913 P.2d at 236, in urging that "the operative question is whether a mutual mistake existed which justified rescission, without limitation to how or when the mistake was made." In addition, he asserts that *South* is factually similar to the present case and mandates the conclusion reached in that case, namely, that a mutual mistake of fact existed which justifies reopening (or rescinding) his

Compromise Settlement. *See South*, 275 Mont. at 405, 913 P.2d at 237. Miller's reliance on *South* is misplaced.

¶23.In *South*, the workers' compensation court denied a petition to rescind a settlement agreement after the claimant re-injured her back while performing one of the jobs listed as acceptable employment in her settlement agreement. *South*, 275 Mont. at 402, 913 P.2d at 236. It did so based on its interpretation that the only mutual mistake of fact on which rescission of such an agreement could be premised under this Court's decisions was a mutual mistake regarding the nature or extent of a claimant's injury. *South*, 275 Mont. at 402, 913 P.2d at 236. We clarified on appeal that, while our previous cases had addressed rescission based on mutual mistake of fact only in that context, a mutual mistake of any material fact sufficient to defeat the parties' intended bargain will support rescission. *South*, 275 Mont. at 402, 913 P.2d at 236. In our discussion, we stated that "the operative question is whether a mutual mistake existed which justified rescission, without limitation to how or when the mistake was made." *South*, 275 Mont. at 403, 913 P.2d at 236.

¶24.While Miller's first *South*-related argument is not altogether clear, he apparently relies on the "without limitation to . . . when the mistake was made" language in contending that the Workers' Compensation Court erred in applying the two-year statute of limitations. The problem with his argument is that no statute of limitations question was at issue in *South* and, as pointed out above, our statement related solely to what kinds of mutual mistakes of fact could justify rescission of a settlement agreement. *See South*, 275 Mont. at 402-03, 913 P.2d at 236.

¶25.Nor need we address Miller's contention that *South* is factually similar to the present case. The dispositive legal issue in this case is whether the statute of limitations bars Miller's petition to reopen the Compromise Settlement. The statute of limitations issue was not raised or addressed in *South* and, as a result, whether the facts of the two cases relating to the bases of the asserted mutual mistakes of fact are similar is irrelevant.

¶26.The Workers' Compensation Court found--and Miller does not dispute--that Miller knew his back condition was related to his head injury at least as early as June 30, 1995. Because Miller's August 3, 1998, petition to reopen his Compromise Settlement was filed more than three years after June 30, 1995, we hold the Workers' Compensation Court did not err in concluding that the petition is barred by the two-year statute of limitations contained in § 27-2-203, MCA.

¶27.Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART